# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## MONTGOMERY DIVISION

| | | |
|---|---|---|
| **BETTY ANN BURKS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-01081-MEF-DRB** |
| | § | |
| **EQUITY GROUP EUFAULA** | § | |
| **DIVISION, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, BETTY ANN BURKS, et al., ("Plaintiffs"), request the entry of an Order permitting under court supervision, notice to all Defendant EQUITY GROUP EUFAULA DIVISION, LLC's ("Equity Group" or "Defendant") Baker Hill Plant hourly 1st and 2nd processing employees, as defined in Plaintiffs' Complaint. As a result of Defendant's illegal pay practices employees did not receive full payment for required pre-production line and post-production line activities that are necessary, integral, and indispensable to their overall employment responsibilities. In support of these individuals' opt-in rights, Plaintiffs state as follows:

**MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICED**
**TO EMPLOYEES OF THEIR OPT-IN RIGHTS**

1.     Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. See 29 U.S.C. § 216(b).

2.     As stated in Plaintiffs' Complaint, Plaintiffs are current or former 1st and 2nd processing employees authorized by the FLSA to sue in their own names on behalf of themselves individually and other employees similarly situated.  Plaintiffs are current and former 1st and 2nd processing employees of Defendant who have brought this action on behalf of all current and former similarly situated 1st and 2nd processing employees, employed at the Eufaula/Baker Hill Alabama Slaughter Plant, whose hours worked were recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked and within the last three (3) years did not receive full payment for required pre-production line and post-production line activities that are necessary, integral, and indispensable to their overall employment

2

responsibilities, such as donning and doffing protective and sanitary equipment, cleaning and sanitizing that equipment as well as themselves, wait time associated with cleaning and sanitizing equipment as well as themselves, walking to and from the production line from their locker or dressing area after already performing compensable activities, time deducted as unpaid breaks that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable, waiting in line to return required supplies, tools, and other equipment needed for line activities, time spent waiting at the line prior to the start of master time clock / scheduled time and time spent continuing work after the master time clock / scheduled time has stopped, and time spent clearing security at the beginning and end of the day.

3.    Plaintiffs know that their claims are typical of the claims of other former and current 1st and 2nd processing employees employed by Defendant, and typical of the claims of all members of the representative class described below. *See* Affidavits of Plaintiffs at ¶¶ 5-9 attached as Exhibit 1; *See* Affidavits of Plaintiffs at ¶¶ 5-9 attached as Exhibit 2.

4.    The representative class consists of all current and former 1st and 2nd processing employees who worked for Defendant at any time within the last three (3) years, whose hours worked were recorded under a wage

compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked but instead are recorded under a system known as line time, master time, master key, gang time, scheduled time, etc., collectively referred to herein as "master time", and who were subjected to Defendant's practice and policy of not paying for work described above and any overtime compensation for hours worked in excess of forty (40) as a result of this practice.

5.    As a result of such compensation practices, potential class members did not receive payment in full for the time set forth in ¶ 2.

6.    The one hundred and fifty four (154) named plaintiffs as well as one hundred and seventy eight (178) opt-in plaintiffs have filed Notices of Consent to Join.[1]

7.    Simply put, all other 1st and 2nd processing employees falling within the class described herein have the right to participate in this litigation.    And, although the class of current and former 1st and 2nd

---

[1]  United States Magistrate Judge Frank Lynch, Jr., permitted notice to proceed stating that: "…the Affidavit of [a single opt-in Plaintiff] shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation."  Order on Plaintiff's Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights, *Larry Guerra v. Big Johnson Concrete Pumping, Inc.*, CASE NO.: 05-14237 (S.D. Fla. May 17, 2006).  In a recent poultry case, Judge Inge Johnson conditionally certifying the class found, "… at this stage of the proceedings, the plaintiffs do not necessarily need to show a "unified policy, plan or scheme of discrimination to establish that the proposed class members are similarly situated."  Order on Plaintiff's Motion for an Order Permitting Court Supervised Notice to Employees of Their Opt-in Rights, *Aguilar v. Pilgrim's Pride Corporation*, CASE NO.: CV-06-J-1673-NE (N.D. Ala. January 31, 2007).  *See* Exhibit 4

processing employees is identified and certain, the individual members of the class cannot be completely identified absent access to Defendant's books and records.

WHEREFORE, Plaintiffs respectfully request that the Court permit and supervise notice, in English and Spanish, to all current and former 1st and 2nd processing employees whose hours worked were recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked and within the last three (3) years did not receive full payment for all hours worked as described in Plaintiffs' complaint.

## MEMORANDUM OF LAW

### A.     Introduction

The FLSA authorizes employees to bring an action individually and on behalf of others similarly situated. *See* 29 U.S.C. § 216(b). The FLSA provides, in part, that:

> An action to recover the liability [for unpaid wages and overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other similarly situated. ***No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to***

> **become such a party and such consent is filed in
> the court in which such action is brought.**

*See id.* (emphasis added).

As part of its processing operation, Equity Group employs hourly processing employees to provide labor to assist in the processing of live chickens. *See* Affidavits at ¶4, attached as Exhibits 1-2.

Hourly processing employees primarily work in 1st processing where chickens are placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled or 2nd processing where chickens after completing 1st processing are placed or hung on lines and are further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc. for delivery to plant customers. *See* Affidavits at ¶5, attached as Exhibits 1-2.

Because the work performed is unskilled or at best in some instances semi-skilled, all work is similar in nature regardless of hourly employees' titles, supervisor or department. *Id.* All hourly employees are interchangeable and they are required to work open positions throughout the plant as production requirements dictate. *See id.* Therefore, employees do not have set job responsibilities and all employees within 1st or 2nd processing perform similar tasks and thus are alike.

Plaintiffs are current and former employees of Defendant. During their employment with Defendant, Plaintiffs were paid on an hourly basis. *See* Affidavits at ¶4, attached as Exhibits 1-2.

While employed by Defendant, Plaintiffs and other similarly situated 1st and 2nd processing employees regularly were not paid for all hours worked and those unpaid hours in excess of forty (40) hours per workweek during their employment with Defendant. *See* Affidavits of **1**[st] **processing employees,** at ¶4, ¶8, attached as Exhibit 1; *See* Affidavits of **2**[nd] **processing employees,** at ¶4, ¶8 attached as Exhibit 2.

Plaintiffs observed that Defendant paid all of their co-employees/1st and 2nd processing employees in the same regard. *See id.* at ¶8. Thus, as a result, Plaintiffs and other similarly situated 1st and 2nd processing employees did not receive compensation for all hours worked and overtime for unpaid hours worked over forty (40) each workweek. *See id.*

Plaintiffs assert that Defendant's above compensation policies violate the FLSA's overtime provisions requiring the payment for all hours worked and of time and one half overtime compensation for each hour worked over forty (40) in a workweek. That is, because Defendant failed to pay all hours worked and time and one half for each hour of overtime worked, Plaintiffs maintain that such compensation practices have adversely affected the rights

of each member of this collective action. Therefore, Plaintiffs seek authorization to facilitate notice to each of Defendant's 1st and 2nd processing employees who were subjected to the illegal pay practices described above at any time within the last three (3) years.

Plaintiffs further request that they be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this case by executing an appropriate consent as required by Section 216(b) of the FLSA. Plaintiffs' affidavits, and the affidavits of additional "opt-in Plaintiffs" [2] who have joined this action since the time it was filed, attest that Defendant's other 1st and 2nd processing employees were subject to the same pay policy, plan and practice, had similar duties, were paid in the same manner, and thus, are similarly situated for purposes of facilitating notice under the FLSA. Plaintiffs furthermore attest that should this Court grant notice, additional Plaintiffs will come forward to participate. *See* Affidavits at ¶10, attached as Exhibits 1-2.

**B.**    **Applicable Standards For Collective Actions**

FLSA Rule 216(b) collective actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging

---

[2] Since the inception of this litigation, numerous Plaintiffs have filed Opt-in Consents. See Court Document Numbers 10, 11, 12, 17, 27, 36, 37, and 39.

to a similarly situated class of Plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is the exact opposite of traditional Rule 23 class actions in which a Plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

Because of this requirement to affirmatively opt-in and because the statute of limitation does not toll for the individual until he files his opts-in consent with the court, a delay in conditional certification, i.e. court supervised notice, prejudices putative class members and benefits Defendant. Plaintiffs respectfully submit, the longer it takes for the Court to issue notice the more likely large numbers of putative class members potentially will lose their right to join this litigation, or at best, retain their right to participate but suffer a reduction in back-pay damages. Case law, recognizing a fundamental difference between Rule 23 class actions and Rule 216(b) collective actions, has also interpreted the statutory sections as requiring all plaintiffs in a collective action under the FLSA to file written consents for statute of limitations purposes. Signed consents filed after the filing of the complaint do not relate back to the date the complaint was filed.

*Grayson v. K Mart Corp.*, 79 F.3d 1086 at 1106 (11th Cir. 1996); *O'Connell v. Champion Int'l Corp.*, 812 F.2nd 393 at 394 (8th Cir. 1987); *La Chapelle v. Owens Illinois, Inc.*, 513 F.2nd 286, 288, 289 (5th Cir. 1975).

## C.    The 11th Circuit and the Two – Tiered *Hipp* Analysis

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b).  *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F .3d 1208, 1219 (11th Cir. 2001 ) (stating that the two-tiered approach "appears to be an effective tool for district courts to adopt in future cases").  Under this two-tiered approach, the court makes an initial determination, based <u>solely upon the pleadings and any affidavits</u>, whether notice of the action should be given to potential class members. *See id.* at 1218. Because the court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See id.* Thereafter, a second, more rigorous factual determination is made as to whether the potential opt-in Plaintiffs are similarly situated.[3] *See id.*

---

[3] Plaintiffs anticipate that Defendant will argue that Plaintiffs and their co-employees are somehow dissimilar or individual defenses apply and that conditional class certification would therefore be inappropriate.  However, the fact remains that such an argument regarding the factual nature of Plaintiffs' claims and Defendant's defenses thereto are irrelevant at this stage of the notification process.  Specifically, a factual analysis regarding the "individualized" nature of Plaintiffs' claims and Defendant's defenses is more appropriate *via* a Motion to Decertify at the conclusion of discovery, not at Stage I. *See Pendlebury v. Starbucks Coffee Co.,* 2005 WL 84500 * 3 (S.D. Fla. Jan. 3, 2005)

This two-tiered approach was utilized by the Middle District of Alabama in *Harper v. Lovett's Buffet Inc.,* 185 F.R.D 358 (M.D. Ala. 1999). The Court found it appropriate to conditionally certify a class of all hourly restaurant employees working at a Dothan restaurant after Plaintiffs presented fifteen (15) affidavits, twelve (12) signed by servers, one (1) signed by a cook, one (1) signed by a hostess and one (1) signed by a food preparation worker, where the affidavits showed they had all been subject to

---

(Marra, J.) (Judge Marra did not consider individualized defenses in permitting Stage I notification); *Cameron-Grant v. Maxim Healthcare Services., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) ("The first determination is made at the so-called "notice stage"....Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in a conditional certification of a representative class.    The action proceeds as a representative action throughout discovery."); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) ("We hold that section 216(b)'s "similarly situated" requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under rule 42(b)."); *Felix De Asencio v. Tyson Foods, Inc.,*130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."); *see also Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual Plaintiffs' disparate factual and employment settings, as well as the various defenses available to the Defendant which appear to be individual to each Plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Goldman v. Radioshack Corp.*, No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the Defendant."). Thus, setting Defendant's anticipated factual arguments aside for purposes of Plaintiff's Stage I Motion, Plaintiffs clearly have met their burden of proof on the "similarly situated" prong under *Hipp.*

the practice of managers clocking them out before work was completed resulting in possible violations of minimum wage and maximum hour provisions of the FLSA. *See id. at 363, 364, 365*. Citing *Grayson v. K Mart Corp.*, 79 F.3d at 1086, 1096, (11th Cir. 1996), the Court stated Plaintiffs bear the burden to establish that they are similarly situated. This burden, which is not heavy, may be met by detailed allegations supported by affidavits. *Id at 1097*. More recently two judges, Judge Coogler and Judge Johnson, in the Northern District of Alabama have granted conditional certification utilizing the *Hipp* Analysis. *See* Exhibit 3 - 5. Furthermore, the *Hipp* analysis has been used outside the 11th Circuit recently in the 4th Circuit where Judge Seymore granted notice in a national collective action against poultry giant, Gold Kist, Inc. *See* Exhibit 6

To that affect, in *Hoffman-La Roche, Inc. v. Sealing*, 110 S. Ct. 482 (1989), the Court ruled that not only did trial courts have authority to compel Defendant-employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential Plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named Plaintiffs to the potential members of the class on whose behalf the

collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential Plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

In addition to individual defenses, Plaintiffs anticipate Defendant may ask for an extensive period of time to conduct discovery in order to respond to this motion. Plaintiffs respectfully oppose such a period for discovery because as stated above, at this initial stage, the conditional certification stage, the Court should base its decision <u>solely</u> on the pleadings and attached affidavits. Defendant wishes to engage in prolonged discovery to attempt to draft a response that will decertify the class before the class even exists. Defendant's response to this motion will essentially be a motion to decertify. If unsuccessful they will attempt a second time to decertify the class after notice is given, discovery is complete and the class is certain. This second bite at the apple is fundamentally unfair and it is not consistent with the two tiered certification process utilized by the 11th Circuit when addressing collective actions. Defendants should not be allowed to decertify the class before the class exists.

There are questions of law or fact common to Defendant's other 1st and 2nd processing employees and the claims of the named Plaintiffs in the instant matter. Indeed, Plaintiffs' claims are typical of the claims of the other individuals in their positions. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of representatives who are similarly situated to Plaintiffs with regard to Defendant's <u>payroll practices and record keeping requirements</u>. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). There is no requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard. *Glass v. IDS Financial Services, Inc.,* 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).

Here, Defendant employed numerous 1st and 2nd processing employees in Baker Hill, Alabama. At some point during the last three (3) years, each of these 1st and 2nd processing employees performed labor for Defendant which included assisting in the processing of chickens. These 1st and 2nd processing employees were paid on an hourly basis, and regularly were not paid for all hours worked and worked more than forty

(40) hours per workweek.  As a result of this practice, Defendant regularly failed to pay their 1st and 2nd processing employees proper compensation owed as required by the FLSA.

Based upon the Complaint allegations and the above-referenced Affidavits, Plaintiffs have satisfied the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated to Plaintiff exist.

## **CONCLUSION**

Here, a collective action is sought as the Defendant has acted or refused to act on grounds generally applicable to the class (Defendant's current and former 1st and 2nd processing employees who were subjected to Defendant's practice and policy of not paying all hours worked and overtime compensation for hours worked over forty (40) in a workweek), thereby making appropriate the same relief with respect to the class as a whole. Additionally, questions of law or fact common to all 1st and 2nd processing employees as described in the class definition predominate over any questions affecting only individual members. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs seek authorization to provide: (1) the proposed "Notification" letter, attached as Exhibit A, to be sent to all similarly

situated employees; along with the (2) the proposed "Notice of Consent to Join" form, attached as Exhibit B, in English and Spanish, which similarly situated employees can complete, sign, and file in this matter.

Plaintiffs have met their burden to facilitate notice to potential class members under Eleventh Circuit precedent. Accordingly, Plaintiffs respectfully request that notice be permitted and supervised and that notice be sent to all current and former 1st and 2nd processing as described in the class definition.

Dated:  May 10, 2007                     Respectfully submitted,

**/s ROBERT CAMP**
ROBERT CAMP
BERNARD NOMBERG
**THE COCHRAN FIRM, P.C.**
505 North 20th Street, Suite 825
Birmingham, AL  35203
Tel: 205-244-1115
Fax: 205-244-1171

-and-

Samuel A. Cherry, Jr.
Lance H. Swanner
**THE COCHRAN FIRM, P.C.**
163 West Main Street
P. O. Box 927
Dothan, AL 36302
(334) 793-1555 (Phone)
(334) 793-8280 (Fax)

-and-

Richard B Celler
**MORGAN & MORGAN, P.A.**
284 South University Drive
Fort Lauderdale, FL 33324
(954) 318-0268 (Phone)
(954) 333-3515 (Fax)

-and-

James W. Parkman, III
Richard M. Adams
William C. White
PARKMAN, ADAMS & WHITE, LLC.
505 20TH Street North, Suite 825
Birmingham, Alabama 35203
(205) 244-1920-Phone
(205) 244-1171-Facsimile

-and-

Maurice John Steensland, III
PARKMAN, ADAMS & WHITE, LLC
739 West Main Street
Dothan, AL 36301
(334) 792-1900-Phone
(334) 712-1352-Facsimile

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2007, I electronically filed the foregoing

Motion with the Clerk of the District Court using the CM/ECF system,

which sent notification of such filing to:

Samuel A. Cherry
Attorney for Plaintiffs
scherry@cochranfirm.com

Lance Harrison Swanner
Attorney for Plaintiffs
lswanner@cochranfirm.com

Bernard D. Nomberg
Attorney for Plaintiffs
bnomberg@cochranfirm.com

Richard B. Celler
Attorney for Plaintiffs
Richard@cellerlegal.com

Maurice John Steensland
Attorney for Plaintiffs
parkman@graceba.net

Richard Martin Adams
Attorney for Plaintiffs
Parkman@graceba.net

William C. White
Attorney for Plaintiffs
parkman@graceba.net

James W. Parkman, III
Attorney for Plaintiffs
parkman@graceba.net

Courtney Reilly Pothoff
Attorney for Defendant
cpotthoff@mindspring.com

Joel P. Smith, Jr.
Attorney for Defendant
joelpsmith@bellsouth.net

Gary D. Fry
Attorney for Defendant
gdfry@pelino.com

Howard A. Rosenthal
Attorney for Defendant
harosenthal@pelino.com

Malcolm S. Gould
Attorney for Defendant
msgould@pelino.com

/s/ **Robert J. Camp**
**ROBERT J. CAMP**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

*This is a Court-Authorized Notice and is not a Solicitation from a Lawyer.
The Court Has Made No Finding as to the Merits of the Case at this Time*

**IF YOU ARE OR WERE, AT ANY TIME DURING THE PAST THREE (3) YEARS AN HOURLY PAID 1ˢᵗ or 2ⁿᵈ PROCESSING PRODUCTION EMPLOYEE, AT THE EQUITY GROUP BAKER HILL ALABAMA PLANT, WHO WAS NOT FULLY PAID REGULAR TIME OR OVERTIME FOR REQUIRED PRE-PRODUCTION LINE AND POST-PRODUCTION LINE ACTIVITIES SUCH AS THE TIME IT TAKES TO CLEAR SECURITY AND THE WALKTIME THEREAFTER, DONNING AND DOFFING PROTECTIVE AND SANITARY EQUIPMENT, CLEANING AND SANITIZING EQUIPMENT AS WELL AS YOURSELF, WAIT TIME ASSOCIATED WITH CLEANING AND SANITIZING EQUIPMENT AS WELL AS YOURSELF, WALKING TO AND FROM THE PRODUCTION FROM YOUR LOCKER OR DRESSING AREA, TIME DEDUCTED AS UNPAID BREAKS THAT DUE TO WALKTIME AND OTHER ACTIVITIES ARE OTHERWISE COMPENSABLE, TIME SPENT WAITING IN LINE TO RETURN REQUIRED SUPPLIES, TOOLS, AND OTHER EQUIPMENT, TIME SPENT WAITING AT THE LINE PRIOR TO THE START OF THE MASTERTIME CLOCK AND TIME SPENT WALKING TO AND CLEARING SECURITY AT THE END OF THE DAY, A COLLECTIVE ACTION LAWSUIT MAY AFFECT YOUR RIGHTS**

- BETTY ANN BURKS, et al., ("Plaintiffs"), former hourly paid production employees who were paid "master key" while employed with EQUITY GROUP EUFAULA DIVISION, LLC. ("Equity" or "Defendant"), have sued Defendant in federal court alleging that Defendant improperly failed to pay them for all hours worked and overtime hours worked in excess of forty (40) during their employment with Defendant. As a result of these alleged practices, Plaintiffs maintain that they were unlawfully deprived of full and proper regular time and overtime compensation due to them under the FLSA. The case name is, Betty Ann Burks, et al., v. Equity Group Eufaula Division, LLC, CIVIL ACTION NUMBER: 2:06-cv-01081-MEF-DRB.

- To date, (332) other hourly paid 1ˢᵗ or 2ⁿᵈ processing production employees have consented to join the lawsuit as plaintiffs.

- The Court has permitted Plaintiffs to send Notice to all similarly situated current and former hourly paid 1ˢᵗ and 2ⁿᵈ processing production employees, paid under a master time system, of Defendant at any time during the past three years, so that they may be permitted to "opt-in" to, or join, this lawsuit to assert their similar legal rights.

- The Court has not yet decided whether Defendant has done anything wrong or whether this case will proceed to trial.  There is no money available now and no guarantees that there will be.  However, you have a choice to assert your legal rights in this case.

| YOUR LEGAL RIGHTS & OPTIONS | |
|---|---|
| **Do Nothing** | **Do Nothing. Lose Nothing (except resulting from the passage of time).** By doing nothing, you retain your legal rights to bring a separate suit against EQUITY (within the applicable statute of limitations period) for allegedly unpaid regular and overtime compensation.  If money or benefits are later awarded in this case, you will not share in them. |
| **Ask to Be Included** | **Complete Opt-in Consent Form.**<br>By "opting in," you gain the possibility of receiving money or benefits that may result from a trial or settlement, but you give up your right to separately sue EQUITY for the same legal claims brought in this lawsuit.  If you choose to "opt-in" to this lawsuit, you may be required to participate in depositions and/or provide written responses in support of your claims. |

Your options are included in this Notice to Opt-in, you must complete the Opt-in Consent Form and forward it to the attorneys designated in the Notice on or before _____, 2007.  If you have any questions or concerns, please contact:

**ROBERT J. CAMP, Esquire**
**THE COCHRAN FIRM**
**505 North 20th Street, Suite 825**
**Birmingham, AL  35203**
**Tel: 1-800-THE-FIRM**
**Fax: 205-244-1171**
*Counsel for Plaintiffs*

**The law prohibits anyone from discriminating or retaliating against you for taking part in this case.  If you believe that you have been penalized, disciplined, punished, threatened, intimidated, or discriminated against in any way as a result of your receiving this notification, your considering whether to complete and submit the Notice of Consent, or your having submitted the Notice of Consent, you may contact THE COCHRAN FIRM at the number provided above.**

# EXHIBIT B

# **CONSENT TO JOIN SUIT AS PARTY PLAINTIFF**

## **TO:   CLERK OF THE COURT AND COUNSEL OF RECORD**

_____ states the following:
<span style="padding-left:2em;">[Print Name]</span>

1.      I am over 18 years of age and competent to give the following consent in this matter.

2.      I am currently, or was formerly employed, by _____ at

the facility located in _____.  I worked at this location from
<span style="padding-left:10em;">[City/State]</span>

_____ to _____.
<span style="padding-left:2em;">[Date]</span> <span style="padding-left:6em;">[Date, or if still working write "present"]</span>

3.      I understand that this suit is being brought to recover compensation for pre and post shift activities from my employer.  I also understand that the lawsuit may seek recovery for unpaid time during my shift.  I understand that the suit is brought pursuant to both federal law and applicable state statutes, if any.

4.      I believe I have not been paid for all compensable time, which I have worked, including overtime.

5.      I hereby consent and agree to be a plaintiff herein and to be bound by any settlement of the case or adjudication by the Court.

I understand that this suit may be brought as a class action covering employees at various locations in which employs similarly situated individuals.  If brought as a class action under either federal or state law, I agree to be a named Plaintiff in such class.

I swear or affirm that the foregoing statements are true to the best of my knowledge.

DATED the _____ day of _____, 2007.


_____        _____
[PRINT NAME]                            [SIGN NAME]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BETTY ANN BURKS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-01081-MEF-DRB** |
| | § | |
| **EQUITY GROUP EUFAULA** | § | |
| **DIVISION, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## EXHIBIT 1

### AFFIDAVIT/DECLARATION OF
### CHANDA YOUNG, TERRELL WILDER, SARA THOMAS, ERVIN SMITH, FELICIA RUSSAW, BENJAMIN PHILLIPS, TEMEKA OLOVER, BERNADETTE LEWIS, FELICIA LASETER, LOUISE JOHNSON, JIMMIE HAMILTON, GLORIA GULLETTE, TERESA GLENN, KENNETH FORD, BARBARA DARBY, MARIE CHITTY, MITCHELL BURKS, BETTY ANN BURKS, BILLY RAY BROWN, STEPHANIE BOYKIN, SHARON BILLINS

## DECLARATION:

1.    My name is _Chanda Young_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _08-25-03_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.

Chanda Young
PLAINTIFF'S NAME

Chanda Young
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

[SEAL]

NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

# DECLARATION:

1.    My name is Terrell Wilder                .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 08-06-1998            until present            . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


___Terrell Wilder___
PLAINTIFF'S NAME

X _Terrell Wilder_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___24th___ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]



My Commission Expires: ___01/17/2011___

4

# DECLARATION:

1.    My name is _Sara Thomas_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _06-01-98_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.   Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _24th_ day of February, 2007.


_Sara Thomas_
**PLAINTIFF'S NAME**

X _Sara Thomas_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

[SEAL]



_____
NOTARY PUBLIC

My Commission Expires: _01/17/2011_

4

## DECLARATION:

1.    My name is ___Ervin Smith___.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___8/1996___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ⟨24th⟩ day of February, 2007.


Ervin Smith
**PLAINTIFF'S NAME**

X Ervin Smith
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires:  01/17/2011

4

## DECLARATION:

1.    My name is _Felicia Russaw_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _09-02-99_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.    Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this the 29th day of February, 2007.


Felicia Russaw
**PLAINTIFF'S NAME**

Felicia Russaw
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]

_____Cara U Moral_____

NOTARY PUBLIC

My Commission Expires:   01/17/2011



4

## DECLARATION:

1.  My name is *Benjamin Phillips*.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately *5-15-2000* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it.  Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers.  To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____24th_____ day of February, 2007.


Benjamin Phillips
**PLAINTIFF'S NAME**

Benjam Phillips
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

[SEAL]



_____
NOTARY PUBLIC

My Commission Expires:   01/17/2011

4

# DECLARATION:

1.    My name is ___Temeka Oliver___.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___10/16/2006___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____23rd_____ day of February, 2007.


Temeka Oliver
**PLAINTIFF'S NAME**

Temeka Oliver
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___*23 hd*___ day of February, 2007.

[SEAL]

_____

NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.    My name is Bernadette Lewis                    .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___5|18|99___ until ___present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _24th_ day of February, 2007.


_Bernadette Lewis_
PLAINTIFF'S NAME

_Bernadette Lewis_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]

_____

NOTARY PUBLIC

My Commission Expires:  __01/17/2011__



4

## DECLARATION:

1.    My name is Felica ~~Easter~~ Laseter

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___10|2001___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.

Felicia Laseter
**PLAINTIFF'S NAME**

**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

[SEAL]

NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

## DECLARATION:

1.    My name is Louise Johnson                .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 00-04-1999       until present           . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.


LOUISE Johnson
**PLAINTIFF'S NAME**

X Louise Johnson
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


    I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this the _____24th_____ day of February, 2007.


_____
NOTARY PUBLIC

My Commission Expires:  01/17/2011

[SEAL]



# DECLARATION:

1.  My name is ___Jimmie Hamilton___.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___10/2002___ until ___Present___. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.      As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.      During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.


Jimmie Hamilton
**PLAINTIFF'S NAME**

Jenny L. Hamilton
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24TH_____ day of February, 2007.

NOTARY PUBLIC

My Commission Expires:   01/17/2011

[SEAL]

4

# DECLARATION:

1.   My name is Gloria Gillette.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 01-19-04 until present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


_Gloria Gullette_
**PLAINTIFF'S NAME**

x _Gloria Gullette_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires: __01/17/2011__

[SEAL]



4

## DECLARATION:

1.    My name is _Teresa Glenn_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _10·05-98_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ⟍24th⟍ day of February, 2007.

Teresa
xo Freasa Glenn
_____
PLAINTIFF'S NAME

X Teresa Glenn
_____
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___24th___ day of February, 2007.

[SEAL]



_Cara U. Moral_
NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

## DECLARATION:

1.    My name is <u>Kenneth Ford</u>.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately <u>03-09-01</u> until <u>Present</u>. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


Kenneth Ford
**PLAINTIFF'S NAME**

Kenneth Ford
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____23rd_____ day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires:  01/17/2011

[SEAL]

4

# DECLARATION:

1.    My name is _Barbara Darby_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _07/31/2000_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _23rd_ day of February, 2007.


Barbara Darby
**PLAINTIFF'S NAME**

Barbara Darby
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____23rd_____ day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: __01/17/2011__

[SEAL]
CARA U. MORALES
NOTARY PUBLIC
EXPIRES:
01-17-11
ALABAMA STATE AT LARGE

4

## DECLARATION:

1.    My name is Marie Chitty                    .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 07-29-1999          until present          .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ____ day of February, 2007.


_Marie Chitty_____
PLAINTIFF'S NAME

_Marie Chitty_____
PLAINTIFF'S SIGNATURE


3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires: __01/17/2011__

[SEAL]

4

## DECLARATION:

1.     My name is _Ø Mitchell Burks_ .

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _04-29-02_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __24th__ day of February, 2007.


__Mitchell Burks__
PLAINTIFF'S NAME

X __Mitchell Burks__
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.


_____

NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.    My name is *Betty Ann Burts*.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately *12-03-98* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


__Betty Ann Burks__
PLAINTIFF'S NAME


_____
PLAINTIFF'S SIGNATURE


3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.   My name is Billy Ray Brown .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 10/08/01 until Present . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


__Billy Ray Brown__
PLAINTIFF'S NAME

x _Billy Ray Brown_
PLAINTIFF'S SIGNATURE

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

[SEAL]
CARA U. MORALES
NOTARY PUBLIC
EXPIRES:
01-17-11
ALABAMA STATE AT LARGE

4

## DECLARATION:

1.    My name is _Stephanie Boykin_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___11-19-00___ until ___02-2004___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___23rd___ day of February, 2007.


___Stephanie Boykin___
**PLAINTIFF'S NAME**

X___Stephanie Boyk___
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___23rd___ day of February, 2007.

_____
NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

[SEAL]
CARA U. MORALES
NOTARY PUBLIC
EXPIRES:
01-17-11
ALABAMA STATE AT LARGE

4

# DECLARATION:

1.    My name is Sharon Billins .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 01-26-99 until Present . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.  Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on this the _____ day of February, 2007.



Sharon Billins
**PLAINTIFF'S NAME**                              X Sharon Billins
                                                 **PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

BETTY ANN BURKS, et al.,     §
                            §

      Plaintiffs,        §

                             §       **CIVIL ACTION NO.**

v.                        §       **2:06-cv-01081-MEF-DRB**

                             §

EQUITY GROUP EUFAULA    §
DIVISION, LLC,            §

                             §

      Defendant.        §

## EXHIBIT 2

### AFFIDAVIT/DECLARATION OF
### JESSIE ALLEN, SANDREA ANTHONY, ANNIE BEASLEY, BETTYE BIGGERS, ANNIE BLETCHER, PEARLINE BURKS, BERTHA L. CRAYTON, LESLIE DAVIS, CHERRY DEVOSE, ARCHIE GUILFORD, MARY HEARD, LINDA JEAN IVORY, CHRISTOPHER JACKSON, WANDA JACKSON, KENNETH W. KELLEY, ARLENE KENNEDY, SHIRLEY KENNEDY, EVELYN LAMPLEY, MARTHA LASTER, EVELYN LYNN, SHONTESHA MANUEL, DIANNE MCCLOUD, GERTHA r. MCCRAE, RENNA MERRILL, ANDREA PAIGE, OZELLA PERSONS, SHEILA REEVES, MARGARET ROBINSON, NETTIE RODGERS, ANTHONY RUMPH, ROSE SHAW.

## DECLARATION:

1.    My name is _Jessie Allen_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _01-26-99_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours.  Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.

_Jessie Allen_
PLAINTIFF'S NAME

X _Jessie Allen_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___24th___ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

# DECLARATION:

1.   My name is *Sandrea Anthony* .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately *08-25-98* until *Present* .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____ day of February, 2007.


Sandrea Anthony
**PLAINTIFF'S NAME**

Sandrea Anthony
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ____24th____ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires:  01/17/2011



4

# DECLARATION:

1.    My name is *Annie Beasley*.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately *01-31-00* until *Present*. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 𝒶3ʳᵈ day of February, 2007.


Annie Beasley
PLAINTIFF'S NAME

X Annie Beasley
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the  _23rd_____ day of February, 2007.

[SEAL]



_____

NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

# DECLARATION:

1.    My name is _Bettye Biggers_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ~~XXX~~ 07/1998 until _Present_.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.      As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.      During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above).  To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it.  Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers.  To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24 day of February, 2007.

_Bettye Biggers_
PLAINTIFF'S NAME

_Bettye Biggers_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

# DECLARATION:

1.   My name is _Annie Bletcher_ .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _8|6|98_ until _present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.   Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.


Annie Bletcher
**PLAINTIFF'S NAME**

Annie Bletcher
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.


_____

NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

[SEAL]

4

## DECLARATION:

1.    My name is _Pearline Burks_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___09|1999___ until ___Present___. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.  Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


_Pearline Burks_
**PLAINTIFF'S NAME**

_Pearline Burks_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires:   01/17/2011

4

## DECLARATION:

1.   My name is Bertha L. Crayton.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately __8/6/98__ until __Present__. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.      As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.      During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _3rd_ day of February, 2007.


_Bertha L. Crayton_
PLAINTIFF'S NAME

X _Bertha L Crayton_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____3rd_____ day of February, 2007.

_____

NOTARY PUBLIC

[SEAL]



My Commission Expires:  __01/17/2011__

4

## DECLARATION:

1.    My name is _Leslie Davis_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _08-31-1998_ until _present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____ day of February, 2007.


Leslie Davis
**PLAINTIFF'S NAME**

X _____
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]



_____

NOTARY PUBLIC

My Commission Expires: _01/17/2011_

## DECLARATION:

1.  My name is _Cherry Devose_ .

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _08/06/98_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.   I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.   I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


CHERRY DEVOSe
**PLAINTIFF'S NAME**

Cherry Devose
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____23rd_____ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.    My name is **Archie Guilford**.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately **08-06-98** until **Present**. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _24th_ day of February, 2007.


Archie Guilford
_____
PLAINTIFF'S NAME

X _____
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____7th_____ day of February, 2007.

_____Cara U Moral_____

NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

[SEAL]

4

## DECLARATION:

1. My name is _MARY  Heard_ .

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _10 08-06-98_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked. Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the $24th$ day of February, 2007.


MARY Heard
**PLAINTIFF'S NAME**

X Mary Heard
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___24th___ day of February, 2007.



_____

NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

# DECLARATION:

1.    My name is Linda Jean Ivory.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 3|14|93 until Present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.   Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this the 24th day of February, 2007.


_____
**PLAINTIFF'S NAME**

_____
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]



_____
NOTARY PUBLIC

My Commission Expires:   01/17/2011

4

# DECLARATION:

1.   My name is _Christopher    Jackson_ .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _01 21 99_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours.  Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _24th_ day of February, 2007.


Christopher Jackson
**PLAINTIFF'S NAME**

Christopher Jackson
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: ___01/17/2011___



4

## DECLARATION:

1.   My name is ____Wanda Jackson____.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ____08/1990____ until ____10/2004____.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


Wanda Jackson
**PLAINTIFF'S NAME**

Wanda Jackson
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____23rd_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

## DECLARATION:

1.  My name is <u>Kenneth W. Kelley</u>.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately <u>01-07-02</u> until <u>Present</u>.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


Kenneth W. Kelley
**PLAINTIFF'S NAME**

X Kenneth W. Kelley
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____23rd_____ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires:   01/17/2011

4

# DECLARATION:

1.  My name is _Arleen Kennedy_.

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _07/30/2000_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


Arleen Kennedy
**PLAINTIFF'S NAME**

Arlen Kennedy
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the __23rd__ day of February, 2007.

[SEAL]



_____
NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

# DECLARATION:

1.   My name is Shirley Kennedy                    .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___8 20 98___ until 05-03-2005___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.   Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on this the __24th__ day of February, 2007.


_Shirley Kennedy_
**PLAINTIFF'S NAME**

_XShirley Kennedy_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___24th___ day of February, 2007.



[SEAL]

NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1. My name is *Evelyn Lampley* .

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___8│1998___ until ___Present___ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.      As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.      As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.      During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.


        I declare under penalty of perjury that the foregoing is true and correct.


        Executed on this the ⸻24th⸻ day of February, 2007.



Evelyn Lampley
**PLAINTIFF'S NAME**

Evelyn K Lampley
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.


NOTARY PUBLIC

My Commission Expires: __01/17/2011__

[SEAL]

4

## DECLARATION:

1.     My name is  Martha Laster                    .

2.     I am a Plaintiff in this action.

3.     I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.     To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___11/16/99___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.     During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.     During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 2 th day of February, 2007.


_MARthA LASTER_
**PLAINTIFF'S NAME**

_Martha Later_
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

_____

NOTARY PUBLIC

My Commission Expires:  01/17/2011

[SEAL]

4

## DECLARATION:

1.    My name is _Engela Lynn_ .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _00-19-01_ until _Present_ .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____ day of February, 2007.


**Engela Lynn**
PLAINTIFF'S NAME

**X Engela L_____**
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]



_____
NOTARY PUBLIC

My Commission Expires:  __01/17/2011__

4

## DECLARATION:

1.   My name is _Shontesha Manuel_ .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___10 16 00___ until ___Present___. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.     I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.     I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____ day of February, 2007.

_____
PLAINTIFF'S NAME

_____
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.


_____

NOTARY PUBLIC

My Commission Expires:  __01/17/2011__

[SEAL]

CARA U. MORALES
NOTARY PUBLIC
EXPIRES:
01-17-11
ALABAMA STATE AT LARGE

4

## DECLARATION:

1.   My name is Dianne McCloud.

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 09-09-1998 until present. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


Dianne McCloud
**PLAINTIFF'S NAME**                          **PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires: __01/17/2011__

4

## DECLARATION:

1.    My name is _Gertha R. McCrae_

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _04-07-99_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.


    I declare under penalty of perjury that the foregoing is true and correct.


    Executed on this the 24th day of February, 2007.


Gertha R. McCrae                    Gertha R. McCrae
**PLAINTIFF'S NAME**                    **PLAINTIFF'S SIGNATURE**


3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.


_____
NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.    My name is _Renna Merrill_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _8|1998_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.·  Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.

Renna Merrill
**PLAINTIFF'S NAME**

Renna Merrill
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____ day of February, 2007.

NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.  My name is **ANdreA Paige** .

2.  I am a Plaintiff in this action.

3.  I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.  To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately **12/2000** until **Present** .  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.  During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.  During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


_Audrea Paige_
PLAINTIFF'S NAME

X _Andrea Paige_
PLAINTIFF'S SIGNATURE

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _23rd_ day of February, 2007.


NOTARY PUBLIC

My Commission Expires: __01/17/2011__

[SEAL]

4

# DECLARATION:

1. My name is _Ozella Persons_ .

2. I am a Plaintiff in this action.

3. I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4. To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _09-01-98_ until _Present_ . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5. During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6. During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _23rd_ day of February, 2007.


_Ozella Persons_

PLAINTIFF'S NAME SIGNATURE                PLAINTIFF'S SIGNATURE NAME

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ____23nd____ day of February, 2007.


_____
NOTARY PUBLIC

[SEAL]



My Commission Expires: __01/17/2011__

4

## DECLARATION:

1.    My name is Sheila Reeves .

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately 08-06-1998 until present . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.   Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10. I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11. I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _24th_ day of February, 2007.


Sheila Reeves
PLAINTIFF'S NAME

X Sh Oa Reeves
PLAINTIFF'S SIGNATURE


3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the ___24th___ day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

## DECLARATION:

1.    My name is _MARGARET Robinson_.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge. I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately _08-06-98_ until _Present_. As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers. In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers. Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department. That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities. Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.


MARGARET Robinson
**PLAINTIFF'S NAME**

Margaret Robinson
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24TH_____ day of February, 2007.

[SEAL]

_____
NOTARY PUBLIC

My Commission Expires: __01/17/2011__

4

## DECLARATION:

1.    My name is __Nettie Rodgers__.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately __08/6/1998__ until __Present__.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.     As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.     As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.     During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 23rd day of February, 2007.


Nettie Rodgers
**PLAINTIFF'S NAME**

Nettie Rodgers
**PLAINTIFF'S SIGNATURE**

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____23rd_____ day of February, 2007.

_____

NOTARY PUBLIC

[SEAL]

My Commission Expires:  01/17/2011

4

# DECLARATION:

1.   My name is ANThONY RumPh .

2.   I am a Plaintiff in this action.

3.   I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.   To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately  12·21·98  until  Present . As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.   During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.   During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.   Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked.  Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 24th day of February, 2007.


Anthony Rumph
**PLAINTIFF'S NAME**

X anthony rumph
**PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.


 I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

 Given under my hand and official seal this the _____ 24th _____ day of February, 2007.


_____

NOTARY PUBLIC

[SEAL]

My Commission Expires: ___01/17/2011___

4

# DECLARATION:

1.    My name is ___Rose Shaw___.

2.    I am a Plaintiff in this action.

3.    I make this Declaration based on my personal knowledge.  I am over the age of 18 years and competent to testify to the matters contained within this Declaration.

4.    To the best of my knowledge, I worked for Defendant, as a poultry-processing laborer in and among others, in the City of Baker Hill, County of Barbour, State of Alabama, from approximately ___08-06-98___ until ___Present___.  As a poultry-processing laborer, I was specifically employed by Defendant to assist in the production and/or processing of poultry for Defendant and its customers.  In this capacity, the Defendant paid me on an hourly basis.

5.    During my employment with Defendant, I personally observed, on a daily basis, that hourly processing employees primarily work in two (2) general areas: (1.) 1st processing, where poultry is placed or hung on lines, killed, disemboweled, inspected, diseased parts are removed or trimmed, cleaned and chilled; or (2.) 2nd processing, where poultry after completing 1st processing, is placed or hung on lines and is further processed, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc... for delivery to plant customers.  Because the work we perform admittedly is unskilled, it is similar in nature regardless of hourly employees' titles, supervisor or department.  That is, all hourly employees are interchangeable and therefore are required to work open positions throughout the plant on a daily basis as production requirements dictate.

6.    During my entire employment with Defendant, I was not fully paid for required pre-production line and post-production line activities that are necessary, integral, and indispensable to my overall employment responsibilities.  Such as the time it takes to clear security and the

compensable walk time that ensues thereafter; donning and doffing protective and sanitary equipment; cleaning and sanitizing that equipment, as well as myself; wait time associated with cleaning and sanitizing equipment, as well as myself; walking to and from the production line from my locker, or dressing area after already performing compensable activities; time deducted as unpaid breaks, that due to walk time, donning, doffing, and wash times the unpaid breaks should be compensable; waiting in line to return required supplies, tools, and other equipment needed for line activities; time spent waiting at the line prior to the start of the master time clock; time spent continuing work after the master time clock has stopped; and time spent walking to, and clearing, security at the end of the day.

7.    As further evidence of my similarity to my co-laborers, both in 1st and 2nd processing, I also personally observed that "hours worked" for my co-laborers and me is/was recorded under a wage compensation system in which individual employee time clock punches are not the basis for starting and ending hours worked.    Instead, hours worked are recorded under a system known as line time, master time, master key, gang time, etc... (generally referred to as "master time"), where hours recorded by Defendant are reflected by the swiping and/or recording of time by a supervisor and/or manager of Defendant, that simultaneously clocks multiple employees in and out during the workday, regardless of the actual time worked by my co-laborers and myself.

8.    As a result of this practice, Defendant failed to pay me in full, for all hours worked. Since Defendant failed to properly count all hours worked, in those weeks that Defendant recorded I worked over forty (40) hours, I am owed overtime for those hours. Alternatively, in those weeks in which Defendant recorded I worked less than forty (40) hours, but had Defendant properly counted all hours worked, I would have worked over forty (40) hours, I am likewise owed overtime for those hours over forty (40).

9.    During my employment with Defendant, and as described above, I personally observed that there were numerous co-employees with whom I

2

worked, that: (a) performed the same or similar job duties as I performed; (b) worked the same amount of hours that I worked per workweek; and (c) were paid in the same illegal manner in which I was paid (not receiving pay for work described in ¶¶7-8 above). To my knowledge, there are/were hundreds of individuals employed by Defendant who have been subjected to the illegal pay practices described above, many of which already have joined this lawsuit.

10.    I personally am aware that other and additional current and former hourly processing employees will join this litigation if they are given notice of it and an opportunity to join it. Numerous employees have expressed their desire to join this litigation, but have not done so to date because of fear of retaliation by Defendant and its managers. To that end, Defendant and its managers have attempted to discourage and/or intimidate my co-workers from joining this lawsuit by issuing both express and implied threats involving job security.

11.    I understand and aver the allegations contained within this Declaration are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___24th___ day of February, 2007.


__Rose Shaw__                          X _Rose D. Shaw_
**PLAINTIFF'S NAME**                   **PLAINTIFF'S SIGNATURE**

3

STATE OF ALABAMA,

COUNTY OF BARBOUR.

I, the undersigned, a Notary Public in and for said State and County aforesaid, hereby certify that the aforementioned, whose name is signed to the foregoing, and who is known to me, acknowledged before me on this date that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _____24th_____ day of February, 2007.

[SEAL]

_____Cara U. Morales_____
NOTARY PUBLIC

My Commission Expires: ___01/17/2011___

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| **BETTY ANN BURKS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-01081-MEF-DRB** |
| | § | |
| **EQUITY GROUP EUFAULA** | § | |
| **DIVISION, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## EXHIBIT 3

FILED

2007 Jan-31  PM 01:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

SALVADOR AGUILAR, et al.,

    Plaintiffs,

vs.                        CASE NO. CV-06-J-1673-NE

PILGRIM'S PRIDE CORPORATION,

    Defendant.

### ORDER

This case came on to be heard on the plaintiffs' motion to conditionally certify class and facilitate notice (doc. 15), plaintiffs' memorandum in support of motion (doc. 16), defendant's opposition to plaintiffs' motion (doc. 20), and plaintiffs' reply (doc. 23). The court held a hearing on January 30, 2007, at which both parties were present by and through their respective counsel of record and the court heard arguments. Having considered the foregoing, the court finds as follows:

The plaintiffs brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, on behalf of themselves and other similarly situated individuals. More specifically, the plaintiffs allege that their employer, defendant Pilgrim's Pride Corporation, violated the FLSA by failing to pay employees for donning and doffing protective gear and "line time" employees are not paid in accordance with the amount of time they actually perform work.

The defendant asserts several reasons why this case is not appropriate for class action treatment, including that different lines have different ways of calculating "line time" and that the Athens and Enterprise plants have different customs regarding what protective gear employees may put on at home.

The Eleventh Circuit Court of Appeals has established a two tiered approach for a district court's consideration of whether to allow a FLSA claim to proceed as a collective action:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are

2

Case 2:06-cv-01081-MEF-TFM    Document 40-6    Filed 05/10/2007    Page 4 of 9
Case 5:06-cv-01672-JEU    Document 34-1    Filed 01/31/2007    Page 8 of 9
Case 2:06-cv-00951-MEF-TFM    Document 54    Filed 04/02/2007    Page 8 of 9

dismissed without prejudice. The class representatives-
i.e. the original plaintiffs-proceed to trial on their
individual claims.

[*Hipp v. Liberty National Life Insurance Company,* 252 F.3d 1208,
1218 (11th Cir.2001)] (quoting *Mooney v. Aramco Servs. Co.,* 54 F.3d
1207, 1213-14 (5th Cir.1995) (internal footnote omitted)). Since *Hipp,*
the district courts in our circuit have utilized the two-tiered approach
described above. *See, e.g., Reed v. Mobile County Sch. Sys.,* 246
F.Supp.2d 1227, 1230 (S.D.Ala.2003); *Barron v. Henry County Sch.
Sys.,* 242 F.Supp.2d 1096, 1102 (M.D.Ala.2003); *Stone v. First Union
Corp.,* 216 F.R.D. 540, 544-46 (S.D.Fla.2003).

*Cameron-Grant v. Maxim Healthcare Services, Inc.,* 347 F.3d 1240, 1243 (11th

Cir.2003).

During the notice stage, the court may facilitate the notice process to

prospective class members.   However, before intervening in the process, the

district court must be satisfied that there are other employees of the employer who

(1) desire to opt-in and (2) who are similarly situated with respect to their job

requirements and their pay provisions. *Cameron-Grant,* 347 F.3d at 1244; *Dybach

v. Florida Dept. of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir.1991).

In *IBP, Inc. v. Alvarez,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288

(U.S.2005), the United States Supreme Court directly addressed several of the

issues presented by the plaintiffs here.  The Court wrote that:

under *Steiner [v. Mitchell,* 350 U.S. 247, 248, 76 S.Ct. 330, 100 L.Ed.
267 (1956)], activities, such as the donning and doffing of specialized
protective gear, that are "performed either before or after the regular

3

work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *[Steiner]*, at 256, 76 S.Ct. 330.

*Alvarez*, 126 S.Ct. at 521 (U.S.2005).

Applying the standards stated above, the court finds that the plaintiffs have proposed a class of all "line time" employees.[1] Such employees assert that defendant has violated the FLSA by (1) failing to pay them for donning and doffing protective gear, and (2) failing to pay them for all time actually worked, rather than "line time." The defendant responds that this in not an appropriate class because the Athens and Enterprise plants have different customs as to what the employees may don at home, and that different positions within one plant have different requirements as to what gear must be donned and how line time is calculated. However, at this stage of the proceedings, the plaintiffs do not necessarily need to show a "unified policy, plan, or scheme of discrimination" to establish that the proposed class members are similarly situated. *Hipp v. Liberty*

-------

[1]The parties both mentioned non-line time employees at the hearing. The plaintiffs conceded that if the information provided by the defendant was, in fact, true, then the non-line time employees probably did not belong in the proposed class. The court therefore does not at this time include non-line time employees within the plaintiffs' proposed class. Should the plaintiffs determine that the non-line time employees do belong within the proposed class, the court will entertain a motion to that effect. Should the plaintiffs determine that the non-line time employees do not belong within the class proposed by this litigation, the court expects a motion to dismiss those particular plaintiffs, as well as the one feed plant employee plaintiff, to be forthcoming.

4

Case 2:06-cv-01081-MEF-TFM    Document 40-6    Filed 05/10/2007    Page 6 of 9
Case 5:06-cv-01053-IPJ    Document 34    Filed 01/31/2007    Page 5 of 9
Case 2:06-cv-00951-MEF-TFM    Document 54    Filed 04/02/2007    Page 6 of 9

*National Life Insurance Co.*, 252 F.3d 1208, 1217 (11ᵗʰ Cir.2001)(quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11ᵗʰ Cir.1996). Here, through consents to join this case filed to date, the plaintiffs have established that at least 93 employees exist who allege they do not get paid for time spent donning and doffing protective gear or for other time they are engaged in "work."[2]

Having considered the foregoing, and being of the opinion the motion to conditionally certify the class and facilitate notice is due to be granted;

It is therefore **ORDERED** by the court that the plaintiffs' motion to facilitate 29 U.S.C. § 216(b) notice be and hereby is **GRANTED**.

It is further **ORDERED** by the court that the following Notice of Right to Opt-In to Collective Action be sent to all present and former employees of defendant who were paid on a "line time" basis, from August 23, 2003, to the present. It is further Ordered that said Notice be sent in English as well as accurately translated and sent in Spanish.

**DONE and ORDERED** this the 31ˢᵗ day of January, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[2]The defendant alleges that the amount of time spent donning and doffing gear is de minimus and often accomplished by employees as they are walking to their work stations. However, this goes to the merits of the plaintiffs' claim and is not relevant to the issue of whether other similarly situated individuals are subject to the same "unified policy, plan or scheme of discrimination." *Hipp*, 252 F.3d at 1217.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SALVADOR AGUILAR, et al.,

     Plaintiffs,

vs.                               CASE NO. CV-06-J-1673-NE

PILGRIM'S PRIDE CORPORATION,

     Defendant.

## NOTICE OF PENDING FAIR LABOR STANDARDS ACT LAWSUIT

**To:** Present and Former Employees of Pilgrim's Pride Corporation who were paid on a "line time" basis from August 23, 2003, to the present.

**Re:** Overtime claims against Pilgrim's Pride Corporation.

## I. INTRODUCTION

The purpose of this Notice is to inform you of the existence of a collective action lawsuit alleging unpaid overtime, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participated in this suit, should you decide that you wish to do so.

## II. DESCRIPTION OF THE LAWSUIT

On August 23, 2006, a lawsuit was filed in the United States District Court for the Northern District of Alabama against Pilgrim's Pride Corporation ("Pilgrim's Pride") by Salvador Aguilar, on behalf of himself and other production line employees of Pilgrim's Pride employed at the facilities in Athens, Alabama OR Enterprise, Alabama.

This lawsuit alleges that Pilgrim's Pride violated the Fair Labor Standards Act ("FLSA") by forcing employees to continue working on the production line even though their employer has stopped compensating them for their time, and not paying employees for time spent donning (putting on) and doffing (taking off) personal protection equipment that their employer requires them to wear. The plaintiffs also seek liquidated damages in an amount equal to the unpaid and underpaid overtime wages. In addition, the plaintiffs have requested an injunction to prohibit Pilgrim's Pride from engaging in future violations of the FLSA.

Pilgrim's Pride contends that all employees were properly paid for all hours actually worked. Pilgrim's Pride expressly denies that it engaged in unlawful conduct with respect to the named plaintiffs and the class members and asserts that the class members were properly paid in accordance with the FLSA.

The court has not ruled on the merits of the plaintiffs' claims or on the denials and other defenses raised by Pilgrim's Pride.

## III. COMPOSITION OF THE CLASS

Plaintiff seeks to recover damages against Pilgrim's Pride on behalf of himself and also on behalf of the other line time paid employees of Pilgrim's Pride, past and present. The Court has ruled that the lawsuit shall be conditionally maintained as a collective action brought by the named Plaintiff, individually and on behalf of the class members. The Court's ruling rests on its preliminary determination that there may be other employees of Pilgrim's Pride who are similarly situated and who desire to join or opt-in to the lawsuit. Specifically, the Court has conditionally certified a class consisting of the following:

> All employees of Pilgrim's Pride's Athens, Alabama or Enterprise, Alabama poultry processing plants during anytime from August 23, 2003, to the present, who were paid on a line time basis and not paid fully for the time actually spent working.

You can participate if you worked on a line for Pilgrim's Pride at either the Athens facility or Enterprise facility at any point in time from August 23, 2003, to the present, and were not paid for all time spent working. Just as is true in any lawsuit, participation does not mean that the named Plaintiff or anyone opting into the collective action, is by participation alone, entitled to recover against Pilgrim's Pride.

## IV. YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT

If you fit the definition of the class described above, you may join this suit or "opt in" by returning in the enclosed envelope or by mailing by First Class mail, postage prepaid, a completed and signed "Consent to Become Party Plaintiff" form postmarked on or before **June 11, 2007**, to Plaintiff's counsel at the following address:

> **WHATLEY, DRAKE & KALLAS, LLC**
> 2323 Second Avenue North
> P.O. Box 10647
> Birmingham, AL 35202-0647
> (205) 328-9576

Further information about this Notice, the deadline for filing a "Consent to Become Party Plaintiff," or questions concerning this lawsuit, may be obtained by writing Plaintiff's counsel at the number and address stated above, or by calling attorney Kevin McKie of Whatley Drake & Kallas, L.L.C., at 1-800-695-6750.

The law firm of Whatley Drake & Kallas, L.L.C. has agreed to represent the Plaintiffs in this case, and by signing the consent to representation and the contract agreement you agree to their representation and the terms therein. As stated in the contract, Whatley Drake & Kallas, L.L.C.

2

is not charging you an hourly fee for their services. Their fee is set up on a contingency basis, and any money owed them will only be collected after the completion of a successful lawsuit.

Failure to timely return or properly complete and sign the Consent to Become Party Plaintiff form by the above date will result in your not being able to participate in this lawsuit.

The law prohibits retaliation against anyone participating in a lawsuit of this nature.

Even if you file a "Consent to Become a Party Plaintiff" form, your continued right to participate in this suit may depend upon a later decision by the District Court that you and the Plaintiffs are actually "similarly situated" in accordance with federal law.

## V. EFFECT OF JOINING THIS SUIT

If you choose to join this suit, you will be bound by the judgment, whether it is favorable or unfavorable. While this suit is proceeding, you may be required to provide information, appear for deposition, and/or testify in court.

## VI. NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE

This notice has been authorized by Judge Inge Johnson of the United States District Court for the Northern District of Alabama solely for the purpose of notifying individuals of the lawsuit. The court has taken no position in this case regarding the merits of the plaintiff's claims or defenses of Pilgrim's Pride. This notice should not be taken as an indication that you should or should not join this lawsuit.

## VII. FURTHER INFORMATION

The pleadings and other documents of record in this lawsuit may be examined and copied at any time during regular business hours at the office of the Clerk of the United Stated District Court for the Northern District of Alabama located at the Hugo Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama.

Pilgrim's Pride is represented by:

GARDERE WYNNE SEWELL LLP
1601 Elm Street, 3000 Thanksgiving Tower
Dallas, TX 75201

and

LIGHTFOOT FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| **BETTY ANN BURKS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-01081-MEF-DRB** |
| | § | |
| **EQUITY GROUP EUFAULA** | § | |
| **DIVISION, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>EXHIBIT 4</u>

FILED
2007 Apr-12 PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| SUSIE KNOTT, *on behalf of herself and others similarly situated,* | ] ] ] | |
| Plaintiff, | ] ] | |
| vs. | ] | 7:06-CV-01553-LSC |
| DOLLAR TREE STORES, INC., | ] ] ] | |
| Defendant. | ] ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Susie Knott's ("Plaintiff") Motion to

Facilitate Notice Pursuant to § 216(b) of the Fair Labor Standards Act, filed

on January 26, 2007.  (Doc. 24.)  The motion has been fully briefed and is

under submission.  The Court convened a hearing on this matter on March

27, 2007.

On August 8, 2006, Plaintiff filed the current action on behalf of

herself and other current and former Dollar Tree store managers similarly

situated.  Plaintiff was once the manager of one of Defendant's stores in

Tuscaloosa County, Alabama. (Doc. 1 ¶ 3.) She alleges that Dollar Tree

Stores, Inc. ("Defendant") violated the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 201 *et seq.*, by intentionally and recklessly failing to pay

overtime compensation.  (Doc. 1 ¶ 4; Doc. 24 ¶ 3.)  Plaintiff seeks

reinstatement; unpaid compensation and benefits; damages and/or

prejudgment interest; attorneys' fees and costs; and appropriate injunctive

relief. (Doc. 1 at 9.) She further requests that the Court  conditionally

certify this cause as a collective action pursuant to 29 U.S.C. § 216(b) and

facilitate nationwide notice to all similarly situated persons.[1]  Defendant

argues that this cause is unsuitable for conditional collective action

certification and notice because Plaintiff and her proposed opt-in class are

not "similarly situated" to each other within the meaning of 29 U.S.C. § 216

(b) and the applicable regulations.

Upon careful consideration of the evidence and legal arguments

submitted by the parties, Plaintiff's motion is due to be granted.

---

[1] Plaintiff appended a proposed notice to her motion. (Doc. 24 ex. 1.) Defendant did not comment on the proposed notice in its response to the motion. (Doc. 41.) If the Court grants notice, Plaintiff asks that Defendants be ordered to produce, within 10 days, the names, addresses, and social security numbers of potential plaintiffs. (Doc. 24 at 3.)

II.     Procedural History.

Plaintiff filed her complaint on August 8, 2006, and asserted a collective action against Defendants on behalf of herself and all others similarly situated. (Doc. 1.) Defendant answered on August 25, 2006. (Doc. 5.) On December 7, 2006, Defendant moved to transfer this action to the United States District Court for the Eastern District of Virginia. (Doc. 11.) The Court denied the motion to transfer venue on February 28, 2007. (Doc. 49.) Plaintiff moved to conditionally certify this cause as a collective action and to facilitate notice on January 26, 2007. (Doc. 24.)

III.    Discussion.

"[A] member of the class who is not individually named in the complaint is not a party to [an FLSA lawsuit] unless he affirmatively 'opts in' by filing a written consent with the Court."[2] *Haynes v. Singer Co.*, 696 F.2d 884, 885 (11th Cir. 1983) (citing 29 U.S.C. § 216 (b)). Plaintiff asks the Court to allow this case to proceed conditionally as a collective action and authorize nationwide notice to "all Store Managers currently employed with

---

[2] In this manner, a collective action under 20 U.S.C. § 216(b) is a "fundamentally different creature than the Rule 23 class action." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003).

Case 2:06caseO7:08-cv-05585-LSC  DocumentA9-7  Filed 05/10/2007  Page 5 of 11

the defendant or previously employed within 3 years of the filing of the Complaint."[3] (Doc. 24 at 1-2.) Before a district court may issue such an order, Plaintiff must show to the court's satisfaction "that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff need not establish "a unified policy, plan, or scheme of discrimination" to satisfy the liberal "similarly situated" requirement of § 216(b)," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996), but she does bear the burden of demonstrating a "reasonable basis" for her claim of class-wide discrimination. *See Haynes*, 696 F.2d at 887. Plaintiff may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination — that is, detailed allegations supported by affidavits which "successfully engage defendants' affidavits to the contrary." *Sperling v. Hoffman-LaRoche, Inc.*,

---

[3] Because Plaintiff has alleged that Defendant has intentionally violated the FLSA, the notice period for the conditional opt-in class would be 3 years. *See* 29 U.S.C. § 255(a); *see also Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994), *cert. denied*, 513 U.S. 929 (1994).

Page 4 of 10

118 F.R.D. 392, 406-07 (D. N.J. 1988). The decision whether to facilitate notice to potential plaintiffs is within the sole discretion of the district court, which also has the power to allow for discovery of the names and addresses of potential collective action class members. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).

The United States Court of Appeals for the Eleventh Circuit has suggested a two-tiered approach for dealing with collective action certification and notice pursuant to § 216(b). *Hipp v. Libery Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).[4] First, a district court would make a decision, "usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' or a representative class." *Id.* Then, "after discovery is largely complete ... [and] the court has much more

---

[4] Although *Hipp* addresses a collective action brought under the Age Discrimination in Employment Act of 1967, the same analysis applies to collective actions under the FLSA. *Cameron*, 347 F.3d at 1243 n.2.

information on which to base its decision," the district court makes a

"factual determination" as to whether the claimants are similarly situated.

*Id.*

Defendant has not convinced this Court that the "fairly lenient"

standard of the first analytical tier should not be applied. At least 35

individuals from different states have filed consents to opt into this action.

Plaintiff has filed 26 declarations[5] from herself and opt-in plaintiffs — one

of whom is a former Dollar Tree District Manager — that assert "substantial

allegations of class-wide discrimination" through allegations and evidence.[6]

---

[5] The Court notes that these declarations are obviously form declarations. The declarations show minimal (if any) divergence from one another. Although not fatal to Plaintiff's motion for conditional certification and notice, Plaintiff will have to engage in heightened evidentiary and factual development to survive the inevitable "tier two" decertification analysis.

[6] Plaintiff claims that she and the opt-in plaintiffs "were required to work 50-70 hours per week without compensation," and that they "spent 85% or more of their time unloading trucks, stocking shelves, running the cash register and various other non-managerial job duties." (Doc. 24 at ¶ 6.) Plaintiff claims that this was in keeping with "a uniform policy and practice of consistently requiring its Store Managers to work over 40 hours a week for a salaried amount without overtime compensation." (Doc. 1 ¶ 5.) She avers that Defendant has operated its business in this manner for at least 10 years (presumably from the date of the complaint). (*Id.* at ¶ 24.) In essence, Plaintiff has claimed that it is Defendant's District Managers, and not its Store Managers, who wield the powers contemplated by the executive exemption (e.g., store management, authority to hire/fire/promote/discipline/award pay raises, customarily and regularly directing the work of two or more employees). (*Id.* at ¶¶ 7-11.) The declaration of Ernest Dan Howard, former District Manager and current Store Manager in Defendant's employ, is particularly in accord with Plaintiff's allegations. (Doc. 45 ex. A.)

See, e.g, Grayson, 79 F.3d at 1097. Such allegations, if founded, may well unify individuals in the proposed class and allow for "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [FLSA violation]." Hoffman-LaRoche Inc., 493 U.S. at 170. Although Defendant correctly notes that some district courts have employed a heightened analysis[7] — more akin to "tier two" than "tier one" — at this

---

[7] Defendant cites several cases that apply a heightened standard where the parties had already engaged in extensive discovery. See Brooks v. Bellsouth Telecommunications, Inc., 164 F.R.D. 561, 568-69 (N.D. Ala. 1995); Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493, 498 (D. N.J. 2000) (less lenient standard where discovery was completed "well before" the motion for collective action certification was filed). See also Slaughter v. CVS RX Servs., Inc., 2:03-CV-01403-LSC (N.D. Ala. Nov. 2, 2004), where this Court applied a more rigorous standard when the plaintiffs moved to facilitate notice at a comparatively late stage of the litigation; had already conducted extensive discovery; and offered only "mere conjecture" and a single questionable affidavit as evidence that similarly situated employees wished to opt into the lawsuit. No such circumstances are present in the instant case.

Defendant cites additional caselaw, none of which is precedent and some of which is unpublished. In Horne v. United States Automobile Assoc., 279 F. Supp. 2d 1231, 1235-37 (M.D. Ala. 2003), the court found that class certification was due to be denied because, inter alia, movant had at times actually received overtime pay, and offered an affidavit asserting only his "belief" as evidence that there were other similarly situated persons willing to opt in — extenuating factors not present in this cause. Both Harris v. Fee Transportation Servs., Inc., 2006 WL 1994586 (N.D. Tex. May 15, 2006) (unpublished opinion) (court had allowed 7 months for discovery regarding the certification issue) and King v. West Corp., 2006 WL 118577, at *13 (D. Neb. Jan. 13, 2006) (unpublished opinion) (court applied "tier two" certification scrutiny when the plaintiff moved to certify because the parties had, pursuant to a mutual agreement, been proceeding for eighteen months as though the case had been conditionally certified) are likewise distinguishable on their facts.

stage of FLSA collective actions, most of those cases are glaringly distinguishable and therefore inapposite to the instant action.

Moreover, the lion's share of Defendant's brief in opposition to conditional certification and notice argues that the declarations of non-party Dollar Tree store managers and corporate officers show that "[t]he variations in the amount of time each [store manager] spends performing managerial duties and the amount of discretion each [store manager] exercises with respect to personnel decisions are dispositive of whether Dollar Tree [store managers] are similarly situated."[8]  (Doc. 41 at 8.) Defendant accordingly argues that this supposed variance in time spent performing managerial duties and in managerial discretion compels the conclusion that Plaintiff and the opt-in plaintiffs are not similarly situated to one another. While Defendant may ultimately be able to establish this at the "tier two" decertification phase of this cause, the Court exercises its

---

[8] Plaintiff, in turn, counters that even if different store managers spend different amounts of time performing job duties, this does not establish that they are not similarly situated with regard to the job duties they perform, as "[n]ot one [store manager] declared that he/she alone performs a particular job duty that no other [store manager] performs because of the size, location, volume or merchandise of his/her store." (Doc. 45 at 7.) In any event, the Court agrees with Plaintiff that the "tier two" decertification phase is the appropriate juncture to explore these issues.

discretion and finds that Plaintiff has met her burden under the more lenient standard of "tier one."

IV.   Conclusion.

Plaintiff has established "a reasonable basis" for the allegation that a class of similarly situated persons exists, *Grayson*, 79 F.3d at 1097, and her motion is therefore due to be granted. The Court will facilitate nationwide notice to those similarly situated. The parties will be directed to confer and jointly file with the Court a proposed collective action notice and plan for facilitating notice.[9]

A corresponding order is filed contemporaneously herewith.

---

[9] At the March 27, 2007 class certification hearing, Defendant argued that should the Court authorize notice in this case, current and former managers of Defendant's California stores should be excluded because the California store manager job descriptions and duties differ from those of non-California store managers. The Court ordered Defendant to file a written memorandum of law to this effect, and Defendant did so on March 30, 2007, in the form of a motion to exclude current and former California store managers from any notice the Court may authorize. (Doc. 57.)

Because Plaintiff responded on April 2, 2007 that she does not oppose excluding California store managers from notice (Doc. 59), the Court will order the parties to take the "California exclusion" into account while jointly drafting the proposed collective action notice and plan.

Page 9 of  10

Done this 12th day of April 2007.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
147406

Page 10 of 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY ANN BURKS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 2:06-cv-01081-MEF-DRB |
| | § | |
| EQUITY GROUP EUFAULA | § | |
| DIVISION, LLC, | § | |
| | § | |
| Defendant. | § | |

## EXHIBIT 5

2007 Mar-23  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

CYNTHIA RICHTER,                    ]
*on behalf of herself and others*   ]
*similarly situated,*               ]
                                    ]
        Plaintiffs,                 ]
                                    ]
vs.                                 ]        7:06-CV-01537-LSC
                                    ]
DOLGENCORP, INC., *et al.*,         ]
                                    ]
        Defendants.                 ]

## MEMORANDUM OPINION

**I.    Introduction.**

The Court has for consideration Cynthia Richter's ("Plaintiff") Motion

for Expedited Ruling on Collective Action Certification, filed on August 15,

2006, and Dolgencorp, Inc.'s[1] ("Defendant") Motion to Dismiss Pursuant to

---

[1] In addition to Dolgencorp, Inc., the following entities are also named as defendants in this cause: Dolgencorp of New York, Dolgencorp of Texas, and Dollar General Partners. These three defendants claim that they are not subject to this Court's personal jurisdiction and have moved to be dismissed from this case. (Doc. 27.) As addressesed elsewhere in this opinion, that motion is due to be denied. Defendant Dolgencorp, Inc. has stated in its Response to Plaintiff's motion for collective action certification that its fellow defendants joined in that filing "to the extent the Court determines is appropriate" without a waiver of their personal jurisdiction objections. (Doc. 41 at 1 n.1.) Dolgencorp, Inc., however, stated that its co-defendants did not join it in its surreply to Plaintiff's reply brief. (Doc. 71 at 1 n.1.) For the sake of clarity, the

Rule 12(b)(2) for Lack of Personal Jurisdiction, filed on September 5, 2006.
(Docs. 6, 27.)   Both motions have been fully briefed and are under
submission.

Defendant operates retail stores under the trade name "Dollar
General."  (Doc. 2 ¶ 1; Doc. 29 ¶ 1.)    Plaintiff was the manager of
Defendant's store #01558 in Cottondale, Tuscaloosa County, Alabama, from
February 2005 to June 2005.  (Doc. 2 ¶ 3; Doc. 5 at 5.)  On August 7, 2006,
Plaintiff filed this cause as a collective action[2] pursuant to 29 U.S.C. §
216(b).   (Doc. 1.)   She alleges that Defendants intentionally and/or
recklessly "failed to pay their store managers proper wages, including
overtime compensation," in violation of the Fair Labor Standards Act, 29

---

Court will use the term "Defendant" to refer to Dolgencorp, Inc. When the Court refers
to the other defendants, the implicit context will make it obvious.

[2] This action was filed the same day that *Brown, et al., v. Dollar General Store,
LTD, et al.,* 7:02-CV-00673-UWC, was settled. *Brown* was filed in the Northern District
of Alabama in 2002 and assigned to then-Chief Judge U.W. Clemon. Plaintiff asserts that
her allegations in this case are "identical to the ones made in the *Brown* case." (Doc.
7 at 4.)
Also on August 7, 2006, *Gray v. Dolgencorp, et al.,* 7:06-CV-01538-LSC was filed
in this Court. The plaintiffs in that cause (former *Brown* opt-ins) assert substantially the
same allegations against the same defendants as in the instant case, and they are
represented by the same counsel. Plaintiff has stated that she "anticipates" moving for
the consolidation of the *Gray* and *Richter* cases should this Court grant conditional
certification in the latter cause. (Doc. 7 at 3.)

U.S.C. § 201 *et seq.* ("FLSA").[3]   (Doc. 6 ¶ 3.)  Plaintiff asks the Court to conditionally certify this cause as a collective action; to facilitate nationwide notice or partial notice to all similarly situated persons; and to order Defendant to produce the "name, telephone number, address, and social security number of all present and former employees within three years of the date the complaint was filed." (Doc. 6 at 5.)  Plaintiff further seeks unpaid compensation and benefits; damages and/or prejudgment interest; attorneys' fees and costs; and appropriate injunctive relief. Defendant argues that this cause is unsuitable for conditional collective action certification because Plaintiff and her proposed opt-in class are not "similarly situated" to each other within the meaning of 29 U.S.C. § 216 (b) and the applicable regulations.

---

[3] Plaintiff claims that Defendant implemented a company-wide conversion of its store manager positions from hourly to salaried in 1995-96.  She avers that this was done because store managers often had to work overtime hours, and doing so meant that Defendant could avoid "paying its highest paid employee premium overtime rates." (Doc. 5 at 6-7.) Plaintiff further claims that Defendant "imposes uniform guidelines and constraints on store managers that compel all of them to spend the majority of their time on non-management duties.  Those same non-management tasks are performed in each store.  The 'relative importance' of those same non-management tasks is the key to the profitability of each store." (Doc. 53 ¶ 4.)

Upon careful consideration of the evidence and legal arguments made by the parties, Plaintiff's motion is due to be **GRANTED**, and Defendants' motion is due to be **DENIED**.

## II.     Procedural History.

Plaintiff filed her complaint on August 7, 2006, and asserted a collective action against Defendants on behalf of all others similarly situated. (Doc. 1.) She amended her complaint on August 9, 2006, and moved for an expedited ruling on collective action certification on August 15, 2006. (Docs. 2, 6.) Defendant answered on September 5, 2006. (Doc. 29.) On that same day, Defendants Dolgencorp of New York, Dolgencorp of Texas, and Dollar General Partners moved to be dismissed from this cause for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. 27.)

## III.     Discussion.

Plaintiff has brought this FLSA action against Defendant on behalf of herself and all current and former store managers similarly situated. However, "a member of the class who is not individually named in the complaint is not a party to [an FLSA lawsuit] unless he affirmatively 'opts in'

Page 4 of 12

by filing a written consent with the Court."[4] *Haynes v. Singer Co.*, 696 F.2d 884, 885 (11th Cir. 1983) (citing 29 U.S.C. § 216 (b)). Plaintiff therefore asks the Court to allow this case to proceed conditionally as a collective action and authorize nationwide notice to "all managers and former managers of Defendants" for the past 3 years.[5] (Doc. 6 at 1.) Before a district court may issue such an order, however, Plaintiff must show to the court's satisfaction "that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff need not establish "a unified policy, plan, or scheme of discrimination" to satisfy the liberal "similarly situated" requirement of § 216(b)," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996), but she does bear the burden of demonstrating a "reasonable basis" for her claim of class-wide

---

[4] In this manner, a collective action under 20 U.S.C. § 216(b) is a "fundamentally different creature than the Rule 23 class action." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003).

[5] Because Plaintiff has alleged that Defendant has intentionally violated the FLSA, the notice period for the conditional opt-in class would be 3 years. *See* 29 U.S.C. § 255(a); *see also Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994), *cert. denied*, 513 U.S. 929 (1994).

discrimination. *See Haynes*, 696 F.2d at 887. Plaintiff may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination — that is, detailed allegations supported by affidavits which "successfully engage defendants' affidavits to the contrary." *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406-07 (D. N.J. 1988). The decision whether to facilitate notice to potential plaintiffs is within the sole discretion of the district court, which also has the power to allow for discovery of the names and addresses of potential collective action class members. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).

The United States Court of Appeals for the Eleventh Circuit has suggested a two-tiered approach for dealing with collective action certification and notice pursuant to § 216(b). *Hipp v. Libery Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).[6] First, a district court would make a decision, "usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs.*

---

[6] Although *Hipp* addresses a collective action brought under the Age Discrimination in Employment Act of 1967, the same analysis applies to collective actions under the FLSA. *Cameron*, 347 F.3d at 1243 n.2.

*Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995)). "Because the court has minimal

evidence, this determination is made using a fairly lenient standard, and

typically results in 'conditional certification' or a representative class." *Id.*

Then, "after discovery is largely complete...[and] the court has much more

information on which to base its decision," the district court makes a

"factual determination" as to whether the claimants are similarly situated.

*Id.*

Although any characterization of Ms. Richter as a wholly new plaintiff

with no connection to the *Brown* litigation is essentially one step shy of a

legal fiction, Defendant has not convinced this Court that the "fairly

lenient" standard of the first analytical tier should not be applied.

Defendant notes the extensive discovery carried out in *Brown* — estimating

that it alone produced over 400,000 pages of documents (Doc. 71 at 3 n.4)

— and correctly observes that district courts often apply a more rigorous

standard in analyzing motions for collective action certification where

substantial discovery has already taken place.[7] However, the discovery in

———————————————

[7] *See Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 568-69 (N.D. Ala. 1995) (denying certification after "extensive discovery" had been done in the case); *Davis v. Charoen Pokphand (USA) Inc.,* 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004)

such cases was conducted by the same plaintiff in the same action in which

the motion for collective action certification was pending. That is not the

situation here.   At least 30 individuals from diverse states have filed

consents to opt into this action. These potential plaintiffs and Ms. Richter

are different and distinct plaintiffs from the named plaintiffs in *Brown*, and

assert "substantial allegations of class-wide discrimination" through

allegations and evidence that Defendant has violated the FLSA. *See, e.g,*

*Grayson*, 79 F.3d at 1097.  Such allegations, if founded, may well unify

individuals in the proposed class and allow for "efficient resolution in one

proceeding of common issues of law and fact arising from the same alleged

[unlawful] activity." *Hoffman-LaRoche Inc.*, 493 U.S. at 170.  Defendant

further argues that this case is inappropriate for collective action

certification because the only disputed element of the executive exemption

---

(applying "a more rigorous standard than that called for...a typical motion for conditional certification" where plaintiffs "have had an opportunity to conduct discovery with respect to defendant's policies and procedures); *Morisky v. Public Service Electric & Gas Co.*, 111 F. Supp. 2d 493, 498 (D. N.J. 2000) (less lenient standard where discovery was completed "well before" the motion for collective action certification was filed). Further, this Court's opinion in *Slaughter v. CVS RX Servs., Inc.*, 2:03-cv-01403-LSC (N.D. Ala. Nov. 2, 2004) applied a more rigorous standard where the plaintiffs moved to facilitate notice at a comparatively late stage of the litigation; had already conducted extensive discovery; and offered only "mere conjecture" and a single questionable affidavit as evidence that similarly situated employees wished to opt into the lawsuit.

is the question of whether Plaintiff's "primary duty" is management - a criterion requiring an individualized inquiry.  (Doc. 47 at 3.)   While Defendant may ultimately be able to establish this at the "tier two" decertification phase of this cause, the Court finds that Plaintiff has met her burden under the more lenient standard of "tier one."

Plaintiff's motion is therefore due to be GRANTED.[8]  The Court will facilitate nationwide notice to those similarly situated.  The parties will be DIRECTED to confer and jointly file with the Court a proposed collective action notice and plan for facilitating notice.

The Court emphasizes, however, that it is under no illusion that the instant action bears no relation to the *Brown* litigation, and will not perpetuate any such pretense.  *Brown*, filed in 2002 and settled in late

---

[8] The Court also has for consideration Defendant's Motion to Strike the Evidentiary Submission Filed with Plaintiff's Reply in Support of the Motion for Collective Action Certification, or in the Alternative for Leave to File Surreply in Opposition to the Motion for Collective Action Certification, filed on October 10, 2006 (Doc. 56), and Defendant's Motion to Strike Plaintiff's Supplementary Evidentiary Submission in Support of the Motion for Collective Action Certification, or in the Alternative for Leave to File Surreply in Opposition to the Motion for Collective Action Certification, filed on January 8, 2007 (Doc. 71). The Court will not strike the evidentiary material in question, but it has given due consideration to the surreply that Defendant appended to its second Motion to Strike. (*Id.*) Both of these motions are therefore due to be GRANTED IN PART (as to leave to file a surreply) and DENIED IN PART (as to the striking of evidentiary material).

2006, was litigated by the same counsel and stated the same allegations against the same defendant. All parties have extensively relied on the evidentiary record of *Brown*, and Plaintiff in particular has tried to, in the words of Defendant, "have it both ways - claiming that she lacks sufficient discovery while relying on the wealth of information accumulated throughout four years of litigation." (Doc. 71 at 2.) Although the interests of justice lead the Court to grant conditional certification and to facilitate nationwide notice, the Court acknowledges its role in ensuring that the discovery process is not unduly duplicative, burdensome, or costly.[9] Accordingly, the Court sees no reason why discovery conducted in *Brown* or in *Gray* should not be used in *Richter* to the extent that it is relevant. The parties are **DIRECTED** to ensure that the discovery in this cause is carried out in good faith and takes into account the time, expense, and substance of the discovery already undertaken in *Brown* and/or *Gray*.

---

[9] *See* Fed R. Civ. P. 26(b)(1) cmt. background (2000) (amendments to the discovery rules were in part "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the Federal Judicial Center").

IV.    Conclusion.

For the aforementioned reasons, this Court exercises its discretion to authorize and order nationwide notice to Plaintiffs' proposed opt-in class, and to conditionally certify this cause as a collective action.  Therefore, Plaintiff's Motion for Expedited Ruling on Collective Action Certification is due to be **GRANTED**.  Should further discovery reveal that the opt-in plaintiffs are too disparate and/or their claims are of an individualized nature not suitable for collective action treatment, Defendant may raise these issues in a motion for decertification or a motion for summary judgment.

Since the Court has conditionally certified this cause as a collective action, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) is due to be **DENIED**.  The moving Defendants have leave to re-file this motion upon any subsequent decertification of this cause.

Further, in light of the considerable amount of time and resources already expended over the life of the *Brown, Richter,* and *Gray* actions, the Court will **ORDER** the parties to actively discuss settlement and/or

Alternative Dispute Resolution possibilities.  The parties will also be

ORDERED to apprise the Court on the outcome of this discussion.

A corresponding order is filed contemporaneously herewith.

Done this 23rd day of March 2007.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
147406

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BETTY ANN BURKS, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **2:06-cv-01081-MEF-DRB** |
| | § | |
| **EQUITY GROUP EUFAULA** | § | |
| **DIVISION, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>EXHIBIT 6</u>

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

RANDOLPH BENBOW, JANICE )
DUBOSE, ERNESTINE HAMPTON, )
TROY PATILLO, DAVID WARD, )
PHYLLIS HARRIS, ARTHUR )
RICHARDSON, CORA BIVENS, )
SAMMY LEWIS, VALARIE HIGHT, )
ALBERTO PENA, TERRY YOW, )
KATHRYN SNIPES, RUBY HOWARD, )  C.A. No.: 3:06-cv-02751-MBS
SARA GRIFFITH, all individually and )
on behalf of all others similarly situated, )
)
          Plaintiffs, )  **ORDER**
)
vs. )
)
GOLD KIST, INC., )
)
          Defendant. )
)

This matter comes before the court on Plaintiffs' motion for notice to potential class members. Motion for Notice to Potential Class Members (Entry 30). Plaintiffs seek conditional certification of a putative class pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). For the reasons stated below, the court grants Plaintiffs' motion.

## PROCEDURAL HISTORY

Defendant Gold Kist, Inc. is a large chicken processing company with plants in Alabama, Georgia, South Carolina, North Carolina, and Florida. On October 20, 2006, Plaintiffs - all of whom are current and former employees of Defendant - filed this action on behalf of themselves and all others similarly situated, alleging violations of the FLSA by Defendant. Specifically, Plaintiffs assert

1

that Defendant failed to pay overtime compensation for time spent donning and doffing protective gear. Plaintiffs filed the instant motion on February 14, 2007, arguing that the putative class is similarly situated for purposes of notice and conditional certification because the class members have performed similar duties in Defendant's processing plants and all claim to have been forced to work without compensation under the same hourly pay structure. Motion for Notice to Potential Class Members, 2. After having received an extension of time, Defendant filed a brief in opposition to Plaintiffs' motion on March 20, 2007. Response in Opposition to Plaintiffs' Motion for Notice to Potential Class Members (Entry 37). The court held a hearing on the motion on March 28, 2007.

## DISCUSSION

Plaintiffs' motion seeks conditional certification of this action under 29 U.S.C. § 216(b) for purposes of giving expedited notice to potential class members. Section 216(b) authorizes a plaintiff alleging FLSA violations to file suit "for and in behalf of himself . . . and any other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. "District courts have the discretion, in appropriate cases, to implement § 216(b) . . . by facilitating notice to potential plaintiffs." Shaffer v. Farm Fresh, 966 F.2d 142, 147 (4th Cir. 1992) (quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 174 (1989)).

Certification of a collective action under § 216(b) is a two-step process. In the first stage:

> [T]he court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are "similarly situated." If the court finds that the proposed class members are similarly situated, the court "conditionally certifies" the class. Putative class members are given notice and the opportunity to "opt-in" and the action proceeds as a representative action throughout discovery.

2

Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (internal citations omitted). During the first stage, plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists, D'Anna v. M/A.Com, Inc., 903 F. Supp. 889, 893-94 (D. Md. 1995), and courts generally apply a relatively lenient standard requiring "nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan," Hoffman, 493 U.S. at 174. See Evans v. Lowe's Home Ctrs., Inc., 2006 U.S. Dist. LEXIS 32104 (M.D. Pa. May 18, 2006) ("This [first stage] typically results in a conditional certification of the class as it is based on minimal information, usually the allegations of the complaint."); Scholtisek, 229 F.R.D. at 387 ("To demonstrate that other potential plaintiffs are similarly situated to him, a plaintiff must make only a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law. A plaintiff's burden at this stage is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.").

The second stage of certification occurs after discovery is complete and is typically precipitated by a motion for 'decertification' by the defendant. Id. In contrast with the first stage, the court in the second stage must "make[] a factual finding on the 'similarly situated' issue, based on the record produced through discovery." Id. If the court determines that the plaintiffs are similarly situated, the collective action may proceed; however, "if the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice." Id.

Applying these principles of law, the court finds that Plaintiffs have made the threshold

3

showing of similarity required in the first stage of collective action certification under the FLSA.[1]

Plaintiffs have provided the court with declarations from seventeen of Defendant's employees, all

of whom state that they have similar duties,[2] similar hourly pay, and were similarly deprived of

compensation for time spent donning and doffing. See Appendix to Plaintiff's Motion for Notice

to Potential Class Members, 4-43 (Entry 30-2); Supplement to Plaintiff's Motion for Notice to

Potential Class Members (Entry 43). Furthermore, more than 1,300 workers from plants in every

state in which Defendant operates have filed notices of consent with the court through Plaintiffs'

counsel since the case was filed. See First Notice of Filing Consents (Entry 5); Second Notice of

Filing Notices of Consent (Entry 15); Third Notice of Filing Notices of Consent (Entry 20); Fourth

Notice of Filing Notices of Consent (Entry 29); Fifth Notice of Filing Notices of Consent (Entry 38).

This evidence is sufficient to meet the lenient standard for giving notice to potential class members.

See Iglesias-Mendoza v. La Bell Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The plaintiffs

rely, as they are entitled to at this stage of the proceedings, on the pleadings and their own

declarations. Plaintiffs have easily made the modest showing that is required of them at this

---

[1] It is undisputed that Plaintiffs' motion is for stage one notification under the FLSA. See Motion for Notice to Potential Class Members, 2 ("Plaintiffs . . . ask[] this court for permission to send a notice to potential plaintiffs . . . to make these individuals aware of their rights and to allow them to make an informed decision as to whether or not to proceed with their case.").

[2] Plaintiffs have proposed a class of all line employees. Plaintiffs' motion refers to "all current and former poultry process division employees," Motion for Notice to Potential Class Members, 2; however, during the hearing, Plaintiffs conceded that the non-line employees did not belong in the proposed class. Plaintiffs' counsel subsequently provided the court with the following revised definition of the proposed class: "All current and former hourly employees who are or have been employed by Gold Kist, Inc. on the first or second processing line . . . ." E-mail from Michael Josephson dated April 10, 2007. Accordingly, the court only includes first- and second-shift line employees within Plaintiffs' proposed class.

4

preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class.").

Defendant's arguments are outside the purview of the first stage of the certification analysis. Defendant asserts that members of the putative class are not similarly situated because various plants have different customs with regard to the types of gear donned and the manner in which hours worked is calculated. Response in Opposition, 7-27. At this stage of the proceeding, however, Plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J.), aff'd in part and appeal dismissed in part, 862 F.2d 439 (3d Cir. 1988), aff'd, 493 U.S. 165 (1989). While each claim may differ as to amount, such determinations are the subject of the merits of the parties' claims, which are not at issue at this stage of the litigation. See Parks v. Dick's Sporting Goods, Inc., 2007 U.S. Dist. LEXIS 20949, *12 (W.D.N.Y. March 23, 2007) ("Whether the proof will ultimately support anything more than conditional certification is not at issue at this time . . . . [T]he fact that there may be variation in job duties or, that upon closer inquiry, it may turn out that some [employees] in some stores are not similarly situated for purposes of a collective action, does not mean that conditional certification must be denied at this juncture of the litigation."). Defendant's objections are premature and more appropriately considered during the second stage of the collective action certification.

## CONCLUSION

Accordingly, Plaintiffs' motion for notice to potential class members is granted. Plaintiffs shall have ten (10) days from the date of this order to submit an agreed upon notice for the court's

5

approval.  In the event the parties are unable to agree, Plaintiffs shall submit the proposed notice to

the court within fifteen (15) days from the date of this order.  Thereafter, Defendant will have five

(5) days to file any objections to Plaintiffs' proposal.

  **IT IS SO ORDERED.**

            /s/ Margaret B. Seymour

April 16, 2007        Honorable Margaret B. Seymour
Columbia, South Carolina     United States District Judge