## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA - NORTHERN DIVISION

BETTY ANN BURKS, et al.,               :
                                       :
            Plaintiffs,                :
                                       :
        v.                             :    No. 2:06-CV-1081-MEF
                                       :
EQUITY GROUP EUFAULA                   :
DIVISION LLC,                          :
                                       :
            Defendant.                 :

### SUPPLEMENTAL CASE SUBMISSION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

Attached, for the Court's consideration, in connection with the pending Motion for Summary Judgment are copies of the Complaint (Exhibit "A") and the Summary Judgment Order (Exhibit "B") entered in Jenkins, et al. v. Harrison Poultry, Inc., Civil Action No. 2:07-CV-0058-WCO (United States District Court for the Northern District of Georgia)("Harrison Poultry"). In Harrison Poultry, the Complaint asserted claims for donning, doffing and cleaning, all of which were dismissed on summary judgment.

This decision was issued on July 29, 2008, after the briefing closed in connection with the pending Motion for Summary Judgment.

_____
Howard A. Rosenthal
Gary D. Fry
Malcolm S. Gould
    Attorneys for Equity Group
    Eufaula Division, LLC

**OF COUNSEL:**
Pelino & Lentz, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA  19103
(215)665-1540

Joel P. Smith, Jr., Esquire
Williams, Pothoff, Williams
    & Smith, LLC
125 South Orange Avenue
Eufaula, Alabama 36027-1626
(334)687-5834

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA - NORTHERN DIVISION**

```
BETTY ANN BURKS, et al.,        :
                                :
            Plaintiffs,         :
                                :
      v.                        :     No. 2:06-CV-1081-MEF
                                :
EQUITY GROUP EUFAULA            :
DIVISION LLC,                   :
                                :
            Defendant.          :
```

## CERTIFICATE OF SERVICE

The undersigned counsel for Equity Group Eufaula Division LLC certifies that a true and correct copy of the Supplemental Case Submission in Support of Motion for Summary Judgment was filed and served electronically with the Clerk of Court and also was served by depositing true and correct copies in the United States Mail, first class postage prepaid, on August 1, 2008, and addressed as follows:

> Robert J. Camp, Esquire
> The Cochran Firm
> 505 North 20th Street
> Suite 825
> Birmingham, AL  35203
> rcamp@cochranfirm.com

> M. John Steensland, III, Esquire
> Parkman, Adams & White
> 739 West Main Street
> Dothan, AL  36301
> parkman@graceba.net, jjsteensland@yahoo.com

> Richard Martin Adams, Esquire
> Parkman, Adams & White
> 505 North 20th Street
> Suite 825
> Birmingham, AL  35203
> parkman@graceba.net

> Samuel A. Cherry, Jr. Esquire
> Cochran, Cherry, Givens, Smith, Lane
>   & Taylor, P.C.
> 163 West Main Street
> Dothan, AL  36301
> scherry@cochranfirm.com, samcherry@cochranfirm.com

> Joseph David Lane, Esquire
> Cochran, Cherry, Givens, Smith, Lane
>   & Taylor, P.C.
> 163 West Main Street
> Dothan, AL  36301
> jlane@cochranfirm.com, jdavidlane@aol.com

Candis A. McGowan, Esquire
Wiggins Childs Quinn & Pantanis, P.C.
The Kress Building
301 North 19th Street
Birmingham, AL  35203-3204
CMcGowman@wcqp.com

Attorneys for Plaintiffs

Howard A. Rosenthal
Gary D. Fry
Malcolm S. Gould
   Attorneys for Equity Group
   Eufaula Division, LLC

**OF COUNSEL**:
Pelino & Lentz, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA  19103
(215)665-1540

Joel P. Smith, Jr., Esquire
Williams, Pothoff, Williams
   & Smith, LLC
125 South Orange Avenue
Eufaula, Alabama 36027-1626
(334)687-5834

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA,**
**GAINESVILLE DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

MAY 23 2007

JAMES N. HATTEN, Clerk
By: *Vicki Dougherty*
Deputy Clerk

| | |
|---|---|
| JACKIE JENKINS,<br>DOMANQUE WARREN, AND<br>OVELLA TANNER,  on behalf<br>of themselves and others<br>similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>HARRISON POULTRY, INC,<br>a Georgia corporation,<br><br>     Defendant. | § § § § § § § § § § § § § §<br><br>Case No.: 2 07 - C V - 0 05**8**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, individually and on behalf of all others similarly situated

("Plaintiffs"), by and through their counsel, for their Complaint against

HARRISON POULTRY, INC. ("HARRISON POULTRY" or "Defendant"), seek

to recover for Defendant's violations of the Fair Labor Standards Act of 1938

(FLSA), 29 U.S.C. §§ 201 *et seq.*, and hereby state and allege as follows:

## INTRODUCTION

1.    This is a representative action brought pursuant to FLSA § 216(b) by

Plaintiff on behalf of himself and all other similarly situated current and former

production employees of Defendant at its Bethlehem, Georgia, facility located in

Barrow County, Georgia, for purposes of obtaining relief under the FLSA for

unpaid wages, unpaid overtime wages, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief the Court may deem appropriate.

2.     Harrison Poultry operates a chicken processing plant in Bethlehem, Georgia ("Bethlehem facility"). The complained of unlawful compensation system at issue in this Complaint has affected Harrison Poultry's present and former hourly production employees at this location.

3.     In *IBP, Inc. v. Alvarez,* 126 S. Ct. 514 (2005), the United States Supreme Court unanimously affirmed a ruling that IBP's wage and hour policies – those at issue in this case – violated the Fair Labor Standards Act of 1938 ("FLSA").

4.     HARRISON POULTRY uniformly denies hourly wages and overtime premium pay to its employees by requiring them to perform "off the clock" work. HARRISON POULTRY's deliberate failure to pay employees earned wages and overtime compensation violates federal law as set out in the Fair Labor Standards Act.

5.     Plaintiffs perform multiple tasks, but are victims to the same illegal policy and practice of failing to pay workers for all time worked, including unpaid but compensable break periods, unpaid hourly wage times and unpaid overtime premium wage times.

## JURISDICTION AND VENUE

6.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331-37.

7.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because HARRISON POULTRY does business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

## PARTIES

8.     Defendant is a Georgia corporation with its principal places of business located in, among others, Barrow County, Georgia.

9.     Plaintiffs are current and former HARRISON POULTRY employees who have worked at HARRISON POULTRY's Bethlehem, Georgia, facility within the last three years from the date of filing of this Complaint

10.     Plaintiffs and other similarly situated employees of HARRISON POULTRY's Bethlehem facility can generally be categorized as "First Processing" and "Second Processing" employees.

11.     First Processing generally includes those employees who work in an area of the plant where the product (chickens) is introduced into the plant and placed or hung on "the line" for killing, cleaning, disemboweling, and chilling.

3

12.     Second Processing generally includes those employees who work in an area of the plant where after the product has completed First Processing, it is further processed, prepared, cut-up, marinated, deboned, weighed, sized, packed, loaded on trucks, etc. for delivery to plant customers.

13.     Plaintiffs are residents and domiciled in the State of Georgia. Plaintiffs have concurrently filed their Consents to Become a Party Plaintiffs pursuant to 29 U.S.C. § 216(b).  See attached Exhibit A.

## GENERAL ALLEGATIONS

14.     As an integral and indispensable part of Plaintiffs' jobs, Plaintiffs are required to pass through security when entering and leaving the facility.  Plaintiffs are required to have their employment status verified and their arrival and departures documented, as well as submit to searches of the person and personal possessions.  Plaintiffs aver that they are not compensated for the time it takes for security to clear them and allow them into the facility and the compensable time afterwards prior to the commencement of production.

15.     Plaintiffs go to a designated area to receive clothing and/or personal protective equipment (PPE) that is required for the work to be performed.  The employees are required to don certain equipment before moving into the production areas.  The employees are required to perform washing activities associated with preparing for work in the production area.  Depending on whether

4

the employee works in First Processing or Second Processing, the employee may be required to acquire special tools for the work to be performed. During the course of this process, the employee then must walk a significant distance to arrive at their respective workstations on the line.

16.     When Plaintiffs leave the line for unpaid breaks or at the end of their shift, they again walk a considerable distance to their respective doffing area where they removes personal protective equipment, wash or sanitize themselves, their PPE, sanitary clothing, and/or equipment or tools and return various clothes, PPE, equipment or tools to the proper areas.

17.     The unlawful compensation system at issue in the Complaint has affected HARRISON POULTRY's former and present hourly production employees at its Bethlehem facility.

18.     Under HARRISON POULTRY's wage compensation system, it pays Plaintiffs and other similarly situated employees only regularly scheduled time that they are on the production assembly line or in production areas under a system known as master time, master key, line time or gang time, collectively referred to herein as "master time". Conversely, as a matter of policy, HARRISON POULTRY does not pay its hourly employees for required pre-production line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as the time it takes to clear security, donning

and doffing protective and sanitary equipment, cleaning and sanitizing that

equipment, as well as themselves, wait time associated with cleaning and sanitizing

that equipment, as well as themselves after completion of the first principal

activity, walking to and from security and the production line from their locker or

dressing area after already performing compensable activities, and waiting in line

to return required supplies, tools and other equipment needed for line activities.  In

addition, Defendant does not pay its employees for time spent waiting at the line

prior to the line start up.  Plaintiffs are required to report to duty before the start of

the master time clock and required to continue work after the master time clock has

stopped.

    19.    During the course of the day, Plaintiffs are provided unpaid breaks

that require them to walk considerable distances where they remove sanitary

clothing and personal protection equipment for his break.  The remaining time

allowed for the break is further shortened by the requirement for the employee to

wash and sanitize, don his or her sanitary clothing and personal protection

equipment and return to the workstation.  Plaintiffs assert these unpaid breaks are

compensable.  Alternatively, if the total unpaid break is not deemed compensable,

Plaintiffs allege they are owed compensation for the walk time prior to and after

unpaid breaks, the time spent donning and doffing clothing and equipment pre- and

post-break respectively, and the time spent washing and/or waiting to wash themselves and their equipment.

20.    HARRISON POULTRY deducts from Plaintiffs' daily time worked, without regard for the actual time spent on break, two (2) uncompensated breaks of fixed duration.

21.    The time for which Plaintiffs and other similarly situated employees are paid is significantly less than the time they spend at work between the time they begin their integral, essential and indispensable work duties and the time they arrive at their workstations on the line.  The work time for which Plaintiffs are not paid includes, but is not limited to:  (1) changing into the protective required work uniforms, sanitary clothing and protective safety equipment that can include, among other things (depending on the task and whether First or Second Processing):  ear plugs, smocks, work pants and shirts; safety jump suits; safety boots; hair nets; face nets; hard hats; aprons; belts with holsters and knifes; and hand and arm protections; (2) walking to and from security, changing areas, work areas and break areas; washing activities; and (3) breaks that are effectively compensable .

22.    The walking time for which Plaintiffs are not paid occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity.

23.    The required protective work uniforms, sanitary clothing and protective safety equipment that Plaintiff must wear, and for which he is not paid for donning and doffing times, is required by HARRISON POULTRY and/or by government regulation.  Plaintiffs' jobs are dangerous and involve serious health and safety risks.  The circumstances of Plaintiffs' jobs, including vital considerations of health and hygiene, require him to wear the protective work uniforms, sanitary clothing and protective safety equipment.  These donning, doffing, washing activities, compensable unpaid breaks and walking duties all add up to a significant amount of time every day for which Plaintiff and others similarly situated are not paid.

24.    In addition to depriving Plaintiffs and others similarly situated of hourly wages for compensable time pursuant to the FLSA, HARRISON POULTRY's failure to accurately account for and report all compensable time worked by the Plaintiffs and others similarly situated has deprived Plaintiffs and others similarly situated of what would otherwise be overtime pay pursuant to the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

25.    Plaintiffs bring Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b). In addition to the claims of the individually named Plaintiffs, Plaintiffs bring this action as representative of all similarly

8

situated former and current employees of HARRISON POULTRY's Bethlehem,

Georgia, facility.  The potential class of "opt-in" employees can be defined as:

> All current and former hourly 1st and 2nd processing employees of
> Defendant, paid under a master time compensation system in which
> individuals' time card punches are not the basis for starting and
> ending hours worked, who worked at the Bethlehem, Georgia, facility
> within three years from the date of filing of this Complaint, and who
> were not paid for all the time spent performing compensable work-
> related tasks or legally compensable time, including, but not limited
> to, authorized unpaid break times, donning and doffing times, washing
> activity times, time associated with passing through security check
> points and walking to changing areas and time walking to security and
> passing through security at the end of the day and walking times to
> and from break areas or donning and doffing areas, and including time
> compensable at regular hourly wages, as well as overtime pay for
> these employees.

26.    The FLSA claims may be pursued by those who opt-in to this case,

pursuant to 29 U.S.C. § 216(b).

27.    Plaintiffs, individually and on behalf of other similarly situated

employees, seek relief on a collective basis challenging, among other FLSA

violations, HARRISON POULTRY's practice of failing to accurately record all

hours worked and failing to pay employees for all hours worked, including

overtime compensation.

28.    The number and identity of other Plaintiffs yet to opt-in and consent

to be party Plaintiffs may be determined from the records of HARRISON

POULTRY and potential class members may easily and quickly be notified of the

pendency of this action.

29.    On information and belief, the Bethlehem, Georgia, facility employs hundreds of hourly wage employees who potentially have FLSA claims similar to the claims set out herein.  Consequently, joinder of all collective action members in a single action is impracticable.

30.    Potential collective action members may be informed of the pendency of this class action through direct mail.

31.    There are questions of fact and law common to the class that predominates over any questions affecting only individual members.  The questions of law and fact common to the class arising from HARRISON POULTRY's actions include, without limitation, the following:

a)  Whether Plaintiffs were compensated for time spent clearing security and time spent walking from security to their changing areas and from changing areas to security;

b)  Whether the security activities at issue are integral or indispensable to Defendant's business activities;

c)  Whether Plaintiffs were compensated for time spent donning and doffing clothing and protective gear, washing, and walking to and from his job posts;

d)  Whether the donning, doffing and washing activities at issue are integral or indispensable to Defendant's business activities;

e)  Whether Plaintiffs were entitled to compensation for time spent donning and doffing, washing activity time, and walking time to and from "the line";

f)  Whether Plaintiffs' donning, doffing, washing activity, and walking time is integral and indispensable to their principal activities;

10

g) Whether Defendant failed to pay employees for unpaid breaks that were effectively compensable.

h) Whether Defendant's compensation policy and practice accurately accounts for the time Plaintiffs are actually working;

i) Whether Defendant's compensation policy and practice is illegal;

j) Whether Defendant had a policy and practice of willfully failing to record and compensate employees for all time worked; and

k) Whether Defendant failed to accurately record all compensable time, resulting in a failure to compensate Plaintiffs and other similarly situated employees of regular hourly wages and overtime pay, in violation of Defendant's policies and procedures and the mandate of the FLSA.

32.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the federal law claims.

33.     The Collective Action Representatives' claims are typical of those of the similarly situated employees in that these employees have been employed in the same or similar positions as the Collective Action Representatives and were subject to the same or similar unlawful practices as the Collective Action Representatives.

34.     A collective action is the appropriate method for the fair and efficient adjudication of this controversy.  HARRISON POULTRY has acted or refused to

act on grounds generally applicable to the similarly situated current and former

employees.  The presentation of separate actions by individual similarly situated

current or former employees could create a risk of inconsistent and varying

adjudications, establish incompatible standards of conduct for HARRISON

POULTRY and/or substantially impair or impede the ability of Collective Action

members to protect their interests.

35.    The Collective Action Representatives are adequate representatives of

the similarly situated current and former employees because they are current

employees of the same processing plant and their interests do not conflict with the

interests of the other similarly situated current and former employees they seek to

represent.  The interests of the members of the class of employees will be fairly

and adequately protected by the Collective Action Representatives and their

undersigned counsel, who have extensive experience prosecuting complex class

action lawsuits.

36.    Maintenance of this action as a collective action is a fair and efficient

method for the adjudication of this controversy.  It would be impracticable and

undesirable for each member of the collective action who suffered harm to bring a

separate action.  In addition, the maintenance of separate actions would place a

substantial and unnecessary burden on the courts and could result in inconsistent

adjudications while a single collective action can determine with judicial economy the rights of all collective action members.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

BROUGHT AGAINST DEFENDANT BY THE INDIVIDUALLY NAMED
PLAINTIFFS AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

37.    Plaintiffs reassert and incorporate by reference paragraphs 1 through 36 as set forth above as if fully restated herein.

38.    At all time material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et. seq.*

39.    The individually named Plaintiffs and all similarly situated employees are victims of a uniform and facility-wide compensation policy and practice in violation of the FLSA.

40.    HARRISON POULTRY violated the FLSA by failing to account for all compensable time of its employees that resulted in a failure to pay Plaintiffs and others similarly situated for compensable hourly wages and overtime premium pay.

41.    HARRISON POULTRY violated the FLSA by failing to pay for time donning and doffing essential required equipment, integral to the principle work activity.

42.    HARRISON POULTRY failed to account for and pay for time walking to and from the line to break areas and/or donning and doffing areas.

13

43.     HARRISON POULTRY failed to account for and pay for time spent clearing security and for time walking to and from security to donning and doffing areas.

44.     HARRISON POULTRY failed to account and pay for time allocated as unpaid breaks.  In the alternative, HARRISON POULTRY failed to pay for walk time to and from unpaid break areas, time spent donning and doffing on unpaid breaks and washing activities associated with breaks.

45.     In perpetrating these unlawful practices, HARRISON POULTRY has also willfully failed to keep accurate records for all of the time worked by its hourly employees.

46.     The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 207(a) (1).

47.     HARRISON POULTRY was and is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce.

48.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations.  None of the FLSA exemptions apply

14

to the Plaintiffs. Accordingly, Plaintiffs must be paid overtime pay in accordance with the FLSA.

49.    HARRISON POULTRY's failure to accurately record compensable work time was willfully perpetrated. HARRISON POULTRY has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid hourly wages and overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find that the Defendant did not act willfully in failing to pay all hourly wages and overtime premium pay wages, Plaintiff and all similarly situated employees are entitled to an award of pre-judgment interest at the applicable legal rate.

50.    As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by HARRISON POULTRY from Plaintiffs for which HARRISON POULTRY is liable pursuant to 29 U.S.C. § 216(b).

51.    Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the HARRISON POULTRY years preceding the date of filing of this Complaint, plus periods of equitable

15

tolling because HARRISON POULTRY acted willfully and knew or showed

reckless disregard of whether its conduct was prohibited by the FLSA.

52.    Pursuant to FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are

entitled to reimbursement of the costs and attorney's fees expended in successfully

prosecuting an action for unpaid wages and overtime wages.

WHEREFORE, it is respectfully prayed that this Court grant to the Plaintiffs

the following relief:

a) At the earliest possible time, issue an Order allowing Notice or issue
such Court supervised Notice to all similarly situated current and
former HARRISON POULTRY hourly employees (working at
Defendant's Bethlehem, Georgia, location in the last 3 years) of this
action and their rights to participate in this action.  Such Notice shall
inform all similarly situated current and qualified former employees
of the pendency of this action, the nature of this action, and of their
right to "opt in" to this action if they worked "off the clock" for times
not paid, including time that may be paid at overtime rates.

b) Issue an Order, pursuant to the Declaratory Judgment Act, 28 U.S.C.
§§ 2201-2202, declaring HARRISON POULTRY's actions as
described in the Complaint are unlawful and in violation of the FLSA
and applicable regulations and are and were willful as defined in the
FLSA;

c) Issue an Order directing and requiring HARRISON POULTRY to pay
Plaintiffs and all other similarly situated employees damages in the
form of reimbursement for unpaid hourly and premium overtime
wages (past and future) for all time spent performing compensable
work for which they were not paid pursuant to the rate provided by
the FLSA;

d) Issue an Order directing and requiring HARRISON POULTRY to pay
Plaintiffs and all other similarly situated employees liquidated

16

damages pursuant to the FLSA in an amount equal to, and in addition to the amount of wages and overtime wages owed to them;

e)  Issue and Order directing Defendant to reimburse Plaintiffs and other similarly situated employees for the costs and attorneys fees expended in the course of litigating this action, pre-judgment and post-judgment interest;

f)  Provide Plaintiffs with such other and further relief, as the Court deems just and equitable.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests trial by jury of all issues triable.

Dated:This the 21st day of May.

Attorney for Plaintiff:

**Deirdre M. Stephens**
Georgia Bar No. 678789
**Morgan & Morgan, P.A.**
191 Peachtree Street, NE - Suite 4200
Atlanta, GA  30303
(404) 965-8811 – Phone
(404) 965-8812 – Facsimile
Email: djohnson@forthepeople.com

<u>Defendant may be served at:</u>
Gregory S. Finch, Registered Agent
107 Star Street
Bethlehem, GA 30620

17

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA,
GAINESVILLE DIVISION

JACKIE JENKINS, DOMANQUE           §
WARREN, AND OVELLA                 §
TANNER, on behalf of themselves    §
and others similarly situated,     §
                                   §
        Plaintiffs,                §    CASE NO.:_____
                                   §
v.                                 §    JURY TRIAL DEMANDED
                                   §
HARRISON POULTRY, INC., a          §
Georgia corporation,               §
                                   §
        Defendant.                 §

## NOTICE OF FILING NOTICE OF CONSENT TO JOIN

Pursuant to the opt-in mechanisms of the FLSA, the named Plaintiff(s) in this matter file

their attached Notices of Consent to Join this action.

DATED this 21st day of May, 2007.

Deirdre M. Stephens
Georgia Bar No. 678789
Morgan & Morgan, P.A.
191 Peachtree Street, NE
Suite 4200
Atlanta, GA 30303
(404) 965-8811 – Phone
(404) 965-8812 – Facsimile
Email: djohnson@forthepeople.com

## CONSENT TO JOIN SUIT AS PARTY PLAINTIFF

**TO:    CLERK OF THE COURT AND COUNSEL OF RECORD**

_Jack.e m Jenkins_ states the following:
        **[Print Name]**

1.  I am over 18 years of age and competent to give the following consent in this matter.

2.  I am currently, or was formerly employed, by _Harrison Poultry_ at the facility located in _Bethlehem Ga_. I worked at this location from _11-7-05_ to _4-19-06_.
    **[Name of plant]**
    **[City/State]**
    **[Date]**    **[Date, or if still working write "present"]**

3.  I understand that this suit is being brought to recover compensation for pre- and post-production time activities from my employer. I also understand that the lawsuit may seek recovery for unpaid production time. I understand that the suit is brought pursuant to both federal law and applicable state statutes, if any.

4.  I believe I have not been paid for all compensable time, which I have worked, including overtime.

5.  I hereby consent and agree to be a plaintiff herein and to be bound by any settlement of the case or adjudication by the Court.

6.  I understand that this suit may be brought as a class action covering employees at the _Harrison Poultry_ plant in _Bethlehem Ga_. and possibly other plants owned by _Harrison Poultry_ If brought as a class action under either federal or state law, I agree to be a named Plaintiff in such class.
    **[Name of Plant]**
    **[City/State]**
    **[Name of Plant]**

I swear or affirm that the foregoing statements are true to the best of my knowledge.

DATED the _10_ day of _Oct 10_, 2006.

_Jackie m Jenkins_
**[PRINT NAME]**

_Jackie m Jenk_
**[SIGNATURE]**

## CONSENT TO JOIN SUIT AS PARTY PLAINTIFF

**TO:   CLERK OF THE COURT AND COUNSEL OF RECORD**

*Domanque Warren* _ states the following:
[Print Name]

1.   I am over 18 years of age and competent to give the following consent in this matter.

2.   I am currently, or was formerly employed by *Harrison Poultry* at the facility located in *Bethlehem, GA*. I worked at this location from
[Name of plant]
*04/01/03* _ _ *08/01/04*
[Date]                      [State]
                              [Date or if still working write "present"]

3.   I understand that this suit is being brought to recover compensation for pre- and post-production time activities from my employer. I also understand that the lawsuit may seek recovery for unpaid production time. I understand that the suit is brought pursuant to both federal law and applicable state statutes, if any.

4.   I believe I have not been paid for all compensable time, which I have worked, including overtime.

5.   I hereby consent and agree to be a plaintiff herein and to be bound by any settlement of the case or adjudication by the Court.

6.   I understand that this suit may be brought as a class action covering employees at the *Harrison Poultry* plant in *Bethlehem GA* and
[City/State]
possibly other plants owned by *Harrison Poultry*. If brought as a class
[Name of Plant]
action under either federal or state law, I agree to be a named Plaintiff in such class.

I swear or affirm that the foregoing statements are true to the best of my knowledge.

DATED the *05* day of *October*, 2006.

*Domanque Warren*                    *Domanque Warren*
[CLIENT NAME]                         [SIGNATURE]

## NOTICE OF CONSENT TO JOIN

Pursuant to 29 U.S.C. § 216(b), I, _Ovella Tanner_, consent to

become a party plaintiff in this action.

_10.15.06_
DATE

_Ovella Tanner_
CLIENT SIGNATURE

(M&M form #80)

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| JACKIE JENKINS, DOMANQUE WARREN, and OVELLA TANNER, individually and on behalf of all others similarly situated, | : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 2:07-CV-0058-WCO |
| vs. | : : | |
| HARRISON POULTRY, INC., | : : | |
| Defendant. | : | |

## ORDER

This case is before the court for consideration of defendant's motion for summary judgment [24-1].

### I.    Factual Background[1]

Defendant operates a poultry processing facility in Bethlehem, Georgia, and plaintiffs are former employees of defendant. In this lawsuit, they allege that defendant failed to compensate them for time spent donning and doffing

---

[1] Unless otherwise noted, the court draws the undisputed facts that underlie the allegations in the complaint from defendant's statement of undisputed material facts. If, however, plaintiffs have disputed a specific fact and pointed to evidence in the record that supports their version of the events, then the court has viewed that fact, evidence, or factual inference in the light most favorable to plaintiffs. Accordingly, the facts set forth above are either undisputed or are viewed in the light most favorable to plaintiffs.

protective equipment, walking from the line to break or donning and doffing
areas, clearing security and walking from security to donning and doffing areas,
and for time allocated as unpaid breaks.  (Compl. ¶¶ 41-44).

A.    *Plaintiff Jackie Jenkins*

Jenkins was an "on and off" employee of defendant for many years. His last
employment stint lasted from November 7, 2004, until April 19, 2006.  During
that time, he worked in the live hang area at defendant's Bethlehem facility.[2]
Every morning before his shift, Jenkins would don personal protective gear,
including a dust mask, hairnet, safety glasses, two sets of gloves, sleeves, boots,
apron, smock, and earplugs, in a utility room that was adjacent to the live hang
area.[3]  Jenkins wore many of these items for his convenience, but, to do his job,
defendant required him to wear a hairnet, protection for his ears, safety glasses,
and a dust mask.[4]

---

[2] An employee in this department takes live chickens from a conveyor belt and attaches
them to shackles affixed to an overhead conveyor belt.  (Jenkins Depo. 37, 40).  Live hang is
also referred to as "receiving."

[3] Although Jenkins typically donned his gear in the plant's utility room, he was free to
don it at home.

[4] Defendant admits that it provided all of the items Jenkins testified to wearing to its live
hang employees, but, in its motion for summary judgment, it denies *requiring* them to wear any
gear.  However, Julietta Moore, defendant's Human Resources Supervisor, testified that, until
March 2008, she had been telling live hang employees that they were required to wear safety
glasses, hairnets, dust masks, and earplugs.  In light of Moore's testimony, the court cannot
accept defendant's assertion that live hang employees were not required to wear *any* gear.  As

Like other live hang workers, Jenkins was paid according to "line time" during the period covered by this lawsuit. In other words, a supervisor kept the time of the entire live hang crew, who were checked in and out as a group. Live hang employees were not checked out until five (5) or ten (10) minutes after the last chicken passed down the line. During the workday, Jenkins and his colleagues enjoyed a ten (10) minute break in the morning, which was paid, and an unpaid thirty (30) minute meal break.

B.    *Plaintiff Ovella Tanner*

Tanner worked for defendant from June 21, 1978, until January 10, 2006, when she resigned. Unfortunately, on April 24, 2003, she suffered an on-the-job injury, and from that date until her resignation in April 2006, she worked with restrictions. Although Tanner worked in a number of light-duty positions (most of which required some degree of donning and doffing of gear) during that three-year period, she recorded–and was paid for–the time she actually worked.[5] Importantly, during the three years that preceded the filing of this lawsuit, Tanner

---

far as defendant's motion for summary judgment is concerned, the court will assume that defendant required its live hang employees to wear the four items Moore identified at her deposition.

[5] Despite her own deposition testimony, Tanner maintains in her opposition to defendant's motion for summary judgment that a factual dispute exists as to whether she was paid according to her line time during part of the period covered by this lawsuit. (Pls.' Br. Opp. Def's Mot. Summ. Jdgmt. 11). Tellingly, she points to no evidence that creates such a dispute; a fact is not disputed simply because plaintiffs' lawyer says it is so.

did not don or doff any required gear off the clock.  In other words, she clocked

in before donning the required smock, hairnet, earplugs, raincoat, sleeves, gloves,

and boots and did not clock out until *after* those items were doffed.[6]  Defendant

---

[6] Because the undisputed evidence of record establishes that Tanner donned and doffed her gear on the clock, the amount of time it took her to do so is immaterial.  Nevertheless, in moving for summary judgment, defendant misrepresented Tanner's testimony so badly that the court feels compelled to publicly voice its displeasure.  In its statement of material facts, defendant, citing to Tanner's deposition, wrote that "[i]t took Ms. Tanner about six seconds to don the gear needed for [her] position." (Def. Stmt. Undisp. Material Facts ¶ 28).  Defendant's statement *grossly* misrepresents Tanner's testimony:

> Q       . . . And about how long would it take you to put all that stuff on as
>          you're walking?
>
> . . . .
>
> Q       (By [Defense Counsel]) If you could just sort of start, one second, two
>          seconds, three seconds, four seconds, five seconds, six seconds.
>
> . . . .
>
>          THE WITNESS: To be honest, I never thought about it.  I just do it.
>
> Q       (By [Defense Counsel]) Okay.  It didn't take that long, though, did it?
>
> . . . .
>
>          THE WITNESS: I had a lot of stuff to put on.  I had a raincoat, the
> sleeves, the smock. *It took a minute.*  You've got to get it right.
>
> Q       (By [Defense Counsel]) Okay.

(Tanner Depo. 33-34) (emphasis added).  After plaintiffs objected to defendant's creative interpretation of Tanner's testimony, defendant wrote that plaintiffs' response "fails to directly refute the facts alleged in ¶ 28." (Def. Reply Stmt. Undisp. Material Facts ¶ 27).  If that statement were not bad enough, the absurdity of defendant's position and conduct is fully cemented by the paragraph's final sentence, which suggests that defendant's original paragraph—the one contending that it took Tanner "about six seconds" to don her gear—"should be deemed admitted as to the fact that . . . it took [Tanner] *about a minute*" to don her gear. (*Id.* (emphasis added)).  The conduct of defendant's lawyer in this regard is inexcusable.

-4-

did not require plaintiff Tanner to clock in or out for short rest breaks or bathroom breaks, and she clocked out for lunch only if she left the premises.

### C.    *Plaintiff Domanque Warren*

The factual circumstances of Warren's FLSA claims are irrelevant because they are barred by the applicable statute of limitations.  Warren last worked for defendant on March 18, 2004.  This lawsuit was not filed until May 23, 2007.  Because the lawsuit was filed more than three years after Warren's termination, Warren's claim is time-barred and must be dismissed.  *See* 29 U.S.C. 216(b) (providing, at most, three-year statute of limitations for FLSA claims).

### II.    **Analysis**

### A.    *Summary Judgment Standard*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment.  *See* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  It is well settled that a court considering a motion for summary judgment must view the evidence in a

-5-

light most favorable to the nonmoving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms . . . provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Id.* at 743. Adopting language from one of its sister circuits, the Eleventh Circuit stated:

-6-

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.*

### B.    *FLSA and the Portal-to-Portal Act*

Put simply, the FLSA requires an employer to pay his employees for time spent engaged in work. Work is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994). The Act creates minimum protections for workers that ensure that they will receive a "fair day's pay for a fair day's work" and will be protected from "from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). "Minimum wage and overtime requirements are the two central themes of the

Act." *Johnson v. RGIS Inventory Specialists*, No. 1:05-CV-389, 2007 U.S. Dist. LEXIS 97023, * 19 (E.D. Tex. May 29, 2007).

Early judicial interpretations of the FLSA "superseded 'long-established customs, practices, and contracts between employers and employees'" and "creat[ed] wholly unexpected liabilities, immense in amount and retroactive in operation." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005). Congress reacted to these "wholly unexpected liabilities" by "clarify[ing] the duties of employers concerning employees for incidental activities that constitute work but which occur before, after, or during the work shift" in the Portal-to-Portal Act. *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562 (E.D. Tex. 2001). In relevant part, the Portal-to-Portal Act provides that

> no employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or . . . overtime compensation, for or on account of any of the following activities . . .
>
> (1)    walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2)    activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

"[A]n activity is considered 'principal' if it is 'an integral and indispensable part of the principal activities for which [the employee] is employed' and not specifically excluded by the Portal-to-Portal Act." *Johnson*, 2007 U.S. Dist. LEXIS 97023 at * 21.   Activities "undertaken 'for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer'" are excluded from FLSA coverage. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47, 50 (8th Cir. 1984) (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398 (5th Cir. 1976)).

Activities that fall outside the Portal-to-Portal Act but within the scope of FLSA are not necessarily compensable.   When a FLSA claim "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.   Split-second absurdities are not justified by the actualities of working conditions or by the policy of [FLSA].   It is only when the employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946).   Most courts have held that daily periods of no more than ten (10) minutes are *de minimis* as a matter of law, even though otherwise compensable. *See Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

C.    *Discussion of Plaintiffs' Claims*

1.    Donning and Doffing

Both Jenkins and Tanner allege that defendant violated the FLSA by failing to compensate them for the time that they spent donning and doffing protective gear. Defendant has moved for summary judgment on these claims, and the court will consider them separately.

Defendant argues that Jenkins, a live hang employee, was not required to don and doff any protective gear. Of course, if that were true, Jenkins' claim *would* fail as a matter of law. *See Johnson*, 2007 U.S. Dist. LEXIS at * 22 (noting that activities not required by employer are excluded from FLSA coverage). But, unfortunately, this case is not that easy to resolve. As already mentioned, a material issue of fact exists as to whether live hang employees were required to wear hairnets, hearing protection, dust masks, and safety glasses.

This issue of material fact does not, however, preclude the entry of summary judgment in defendant's favor as to Jenkins' donning and doffing claim. Because defendant required its live hang employees to wear a pair of safety glasses, ear protection, a hairnet, and a dust mask, Jenkins' claim involves only

-10-

the donning and doffing of generic, not specialized, gear.[7]  Recently, in the

Middle District of Georgia, Judge Royal disposed of an almost identical claim for

time spent donning and doffing generic gear.[7]  *See generally Alford*, 2008 U.S.

Dist. LEXIS 24948.  In *Alford*, Judge Royal analyzed the applicability of three

decisions from circuit courts of appeal that addressed the compensability of

donning and doffing generic gear and concluded that:

> *Gorman*, *Alvarez*, and *Steiner* together display a sound judicial
> instinct.  At their heart, these decisions recognize that the simple act
> of putting on a pair of boots, a hair net, a cap, and ear plugs is
> difficult to distinguish from the act of "changing clothes and
> showering under normal conditions," an act that is by definition
> preliminary or postliminary to work activities. 29 C.F.R. § 790.7(g).
> It is something that the employee can do at his home, in his car, or
> whenever suits his convenience.  It is a task that adds little, if any,
> time and effort to the ordinary act of washing and getting dressed
> that every person undertakes every day.  Thus, whether it is
> characterized as not integral to the principal activities (as in Gorman)
> or as not inherently work (as in Reich) or as *de minimis* (as in all
> three cases) the donning and doffing of such gear is a perfect
> example of the sort of preliminary or postliminary activity excluded
> from FLSA's coverage by the Portal-to-Portal Act.

---

[7] Both courts and the United States Department of Labor have distinguished between
generic gear and specialized gear (sometimes referred to as unique and non-unique gear).  *See*,
*e.g.*, *Alvarez*, 339 F.3d at 903 (distinguishing between non-unique gear like hard hats and safety
glasses and unique gear like Kevlar gloves); *Alford v. Perdue Farms, Inc.*, No. 5:07-CV-87,
2008 U.S. Dist. LEXIS 24948, * 7 (M.D. Ga. March 28, 2008) (noting that the Department of
Labor had taken the position that defendant poultry processor was not obligated to compensate
employees for time spent donning and doffing "such generic items as hair nets, caps, ear plugs,
glasses, and footwear").

-11-

There is no genuine issue of material fact as to the nature of activities performed by the Plaintiffs in donning and doffing their personal protective equipment before and after work each day. As a matter of law, the activities for which Plaintiffs seek compensation were preliminary and postliminary activities not subject to compensation under the FLSA. To the extent that they were otherwise compensable activities, they are *de minimis* in nature.

2008 U.S. Dist. LEXIS 24948, at * 18-19.

The court agrees with Judge Royal and specifically adopts his reasoning.

The donning and doffing of a pair of safety glasses, a pair of earplugs, a hairnet,

and a dust mask "into or onto the appropriate location on the head takes all of a

few seconds and requires little or no concentration. Such items can easily be

carried or worn to and from work and can be placed, removed, or replaced while

on the move or while one's attention is focused on other things." *Reich,* 38 F.3d

at 1126.[8] "[N]either FLSA policy nor the 'actualities' of the employees' working

conditions justif[y] compensation for the time spent performing these activities."

*Alford,* 2008 U.S. Dist. LEXIS 24948, at * 11 (discussing the holding of *Alvarez*).

---

[8] Significantly, defendant allowed its live hang employees to don any gear they chose to wear at home. As defendant notes in its brief, this opportunity, in and of itself, cuts strongly against Jenkins' claim. The United States Department of Labor has declared that its "longstanding position" is that changing into gear is not a principal activity under the FLSA, even when it takes place on the employer's premises, "if employees have the option and the ability to change into the required gear at home." Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006).

-12-

Tanner's claim is even easier to resolve.  The undisputed evidence in the record establishes that during the time period covered by this lawsuit, Tanner was paid by the clock for the actual time she worked, not according to her "line time."[9] This fact is critical because Tanner further testified that she clocked in *before* donning the personal protective gear she was required to wear and did not clock out until *after* she had doffed that gear.[10]  An employee who brings an FLSA action for "unpaid minimum wages or overtime compensation . . . has the burden to prove that he performed work for which he was not properly compensated."

---

[9] Although Tanner maintains otherwise in her opposition to defendant's motion for summary judgment, her deposition testimony could not be clearer:

Q    (By [defense counsel]) Your recollection now is that during the time after you were injured, you either had a card, or you used your hand to clock you in when you start your work---

A    Yes.

Q    —and to clock you out when you stopped your work; isn't that correct?

A    Yes.

(Tanner Depo. 71; *see also id.* at 30, 58-60, 65).

[10] Defendant compensated Tanner for the time that she donned and doffed her gear but did not compensate her for the time she spent waiting on supplies–her gear–every morning. (Tanner Depo. 46 (stating that she would "[g]et her supplies, and then go clock in")).  That waiting time is noncompensable. *See IBP, Inc.*, 546 U.S. at 40-41 (holding that pre-donning waiting time and time spent waiting for supplies are not principal activities and are excluded from FLSA coverage under the Portal-to-Portal Act).  Therefore, to the extent that Tanner's (or, for that matter, Jenkins') donning and doffing claim may be read to embrace the time spent waiting on supplies, it fails as a matter of law.

-13-

*Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir. 2006) (quoting *Anderson*, 328 U.S. at 686-87)).  Tanner has not satisfied her burden with regard to the donning and doffing claim because there is simply no evidence that defendant failed to compensate her for the time she spent donning and doffing her protective gear.  For that reason, defendant is entitled to summary judgment on this part of the case.[11]

### 2.    Time Spent Clearing Security

In their complaint, plaintiffs allege that they should have been compensated for the time they spent clearing security at defendant's facility.  In its motion for summary judgment, defendant contends that this claim fails for two reasons: (1) the time is *de minimis*, and (2) time spent clearing security is noncompensable under the Portal-to-Portal Act.  Plaintiffs do not rebut–or even address–these arguments in their response to defendant's motion for summary judgment.  Because plaintiffs have abandoned this claim, the court will not address it.  Defendant is entitled to summary judgment on plaintiffs' security claim.[12]

---

[11] Plaintiffs may also contend that they are entitled to compensation for the time it took them to walk to or from their work areas after donning and before doffing.  If the complaint can fairly be read to allege such a claim, it fails as to both plaintiffs for the reasons discussed above.

[12] Despite plaintiffs' silence, the court has independently reviewed the record.  The undisputed evidence establishes that employees simply flashed a badge as they entered the plant and were not required to even break stride.  Certainly, the time it took employees to pass the security area, even if work not excluded by the Portal-to-Portal Act, was *de minimis*.

3.    Meal Break Claims

Construing plaintiffs' complaint and responsive brief liberally, they also appear to allege that they should have been compensated for an unpaid, daily thirty (30) minute meal break because the time they spent donning, doffing, washing, waiting, and walking encroached upon their free time. In other words, plaintiffs claim that they should be paid for their entire meal break because they spent some portion of it "working," i.e., donning and doffing gear, washing, and walking to and from their work areas. This claim, as to these plaintiffs, fails for the same reason that their donning and doffing claims failed. Any time that Jenkins spent donning and doffing *required* gear–a dust mask, safety glasses, earplugs, and a hairnet–is *de minimis* as a matter of law, and no evidence suggests Tanner donned and doffed any gear off the clock during the time period covered by this lawsuit.

Alternatively, defendant has shown that the break period plaintiffs attack is a "bona fide meal period," which is not compensable. 29 C.F.R. § 785.19 provides in relevant part that

> [b]ona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

-15-

A meal period should be considered a "bona fide meal period" if the employer establishes that an employee is "completely relieved from duty." *Kohlheim v. Glynn County, Ga.*, 915 F.2d 1473, 1477 (11th Cir. 1990). To be completely relieved from duty, the employee must not be subject to "significant affirmative responsibilities" during the break period. *Id.* The central question is whether the employee is "in fact relieved from work for the purpose of eating a regularly scheduled meal." *Id.*; *see also Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 WL 2020323, * 3 (N.D. Ala. Jan. 22, 2008) (noting that the court must examine whether the challenged break was allotted for the purpose of eating a regularly scheduled meal, whether the defendant's employees retained significant affirmative responsibilities during the break, and whether the employees were subject to real limitations on their freedom during the breaks that inured to defendant's benefit).[13]

---

[13] Although plaintiffs cite *Kohleim* in their brief, they do not discuss or purport to apply this three-part test. At best, the half page devoted to the meal breaks suggests that the washing, walking, waiting, donning, and doffing of protective gear at the beginning and end of the breaks were significant affirmative responsibilities of the employees or, otherwise, created real limitations on their freedom that inured to defendant's benefit. Accordingly, as the parties have done, the court will fix its focus on only the second and third elements of the test.

-16-

No evidence suggests that either Jenkins or Tanner was subject to "significant affirmative responsibilities" during his or her meal break. Rejecting a similar claim, Judge Hopkins wrote that

> "a plant worker's job is to *work* at their station." During the . . . meal period at issue here, the employees are not suffered to work at their stations, or perform any other "significant affirmative responsibilities" which are even remotely analogous to their on-duty tasks. Moreover, Plaintiff offers neither argument nor authority for the proposition that donning, doffing, and washing protective outer gear at the beginning and end of a meal period constitutes "significant affirmative responsibilities" compared to the employees' productive work while on duty. Rather, Plaintiff ignores the completely relieved from duty standard altogether, and offers no analysis of this aspect of her claim.

*Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 WL 2020323, * 5 (N.D. Ala. Jan. 22, 2008) (internal citation omitted). That passage could have been written for this case. Like the plaintiff in *Chao*, Jenkins and Tanner offer only their bald assertion that donning, doffing, walking, and washing are "significant affirmative responsibilities," and that simply is not enough.

Similarly, neither Jenkins nor Tanner was subject to real limitations on his or her freedom during the meal breaks. Unlike the firefighters in *Kohlheim*, plaintiffs did not remain on call or anything of that sort; as in *Chao*, "[s]hort of donning, doffing, and washing their protective gear," Jenkins and Tanner were

-17-

"free to spend their meal periods as they wish[ed]." 2008 WL 2020323, at * 6. Plaintiffs were "completely relieved from duty." *Id.*

Thus, plaintiffs' meal break claim fails for two reasons. First, each plaintiff's claim fails for the same reason as his or her underlying donning and doffing claim. Second, the break period each targets qualifies as a "bona fide meal period" under § 785.19 and, therefore, is noncompensable. For either of these reasons, defendant's motion for summary judgment as to plaintiffs' "lunch break claims" is due to be granted.

### III.    Conclusion

Defendant's motion for summary judgment [24-1] is hereby **GRANTED**. In light of that action, plaintiffs' motion for leave to file a motion for an order permitting court supervised notice [23-1] is hereby **DENIED**. Defendant's motion to strike [28-1] twenty-two consents to join this lawsuit is hereby **GRANTED**.[14]

IT IS SO ORDERED, this 29th day of July, 2008.


s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

---

[14] Plaintiffs have conceded that should the court deny them permission to file a motion for court supervised notice, "the consents submitted should be stricken from the record." (Pls. Reply in Support of Mot. for Leave 3).